Argued February 26; affirmed March 12, 1935

# LIEFLANDER *v.* STATES STEAMSHIP COMPANY

(42 P. (2d) 156)

*Arthur I. Moulton,* of Portland (William P. Lord, of Portland, on the brief), for appellant.

*Erskine Wood,* of Portland (Wood, Montague, Matthiessen & Rankin, of Portland, on the brief), for respondent.

BELT, J. This is an action by plaintiff to recover damages under section 33 of the Seamen's Act (U. S. C. A., title 46, section 688) for personal injuries sustained

while a member of the crew of the merchant vessel "New York", owned and operated by the defendant, States Steamship Company. A verdict and judgment was had for the plaintiff. On motion of the defendant, the judgment was set aside and a new trial ordered for the reason that there was not sufficient evidence of negligence to support the verdict. From this order, the plaintiff appeals.

The plaintiff, an able-bodied and experienced seaman, asserts that, pursuant to orders, he went aloft on the foremast to do some repair work on the collar which holds the jumbo boom in place and, having finished the job, was in the act of descending when he fell backward from the ladder leading from the cross-tree, to the deck below, a distance of about 40 feet, thereby sustaining severe and permanent injuries. The accident occurred in the afternoon of June 15, 1931, while the ship was at sea en route to the Orient. The weather was "nice and calm, just a swell like there is always in the sea". The plaintiff alleges that defendant was negligent "in not equipping the foremast of said steamship with a grab-handle about 10 or 12 inches above the said cross-tree, and which said grab-handle is necessary equipment to be installed for the purpose of hanging to by the seamen in climbing over said cross-tree, in going up and down the mast, and had defendant equipped its said steamship with said grab-handle at said place, plaintiff would not have fallen".

Before considering the evidence relative to the above charge of negligence, it may be well to describe briefly the conditions under which plaintiff worked. In going aloft, the plaintiff ascended a narrow steel ladder set close to the fore part of the foremast and ending at the bottom of the cross-tree. The cross-tree

was a metal projection 20 inches wide extending about six feet on each side of the foremast—thwartwise to the ship. A curving steel plate was attached to the mast and cross-tree, extending outward and downward from the forward side of the mast. The uppermost rung of the ladder was under this steel plate. When heavy cargo was being moved, forestays were attached to the plate to keep the mast from swaying. To permit such attachment, two small holes were drilled in the outer edge of the plate. In ascending to the cross-tree it was necessary for the plaintiff to climb over this plate which extended out about 15 inches from the edge of the cross-tree.

GRAB HANDLE

GRAB HANDLE

POINT WHERE PLAINTIFF SAYS GRAB HANDLE SHOULD BE.

GRAB HANDLE

GRAB HANDLE

STEEL PLATE

CROSS-TREE

The above rough sketch may be helpful in understanding the evidence relative to the issue of negligence.

It is conceded by defendant that there was no iron handhold on the mast 10 or 12 inches above the cross-

tree, where plaintiff alleges there should have been one, as indicated above by X. It is admitted by plaintiff that there were iron handholds on the cross-tree, but he asserts they were so far apart that it was impossible for him to stand on the rungs of the ladder and reach them. The defendant took issue with the contention that these grab handles on the cross-tree could not be reached and offered evidence to show that they were so placed as to be reasonably available for the use of seamen. Plaintiff denied that there were any iron handholds on the side of the mast about two feet above the cross-tree, as above indicated.

Plaintiff thus described the accident: "When I stepped off the cross-tree, I stepped off with my right foot into the the rung of the ladder and I had this end of my left foot laying up on the cross-tree, * * * and I lifted this foot off as I got the other one on, and I didn't have it on the rung yet, and I let my left hand go from the mast and put it in these two holes (drilled holes in plate). * * * There is sharp edges in that hole." "Q. How far could you get your fingers in that hole? A. About two inches. Q. What fingers? A. Just two fingers, the second and third fingers. * * * I let go with my right arm from around the mast and had the two fingers of my left hand in the holes, and I was going to grab underneath the plate for the ladder with my right hand. * * * When I let this arm go, when I was trying to put this foot on the rung,—I did not have this foot on the ladder yet. When I started to put this one on, all at once I started going backward. I tried to grab and I couldn't grab anything. Q. Was there anything in reach to grab to? A. No, nothing at all. I went backward away from the mast, I did not have this left foot on the rung yet, and

I hit the edge of the crow's nest, from falling I turned and I hit my back right on the edge of the crow's nest."

■ The precise question is whether there is substantial evidence tending to show a breach of duty on the part of the defendant as alleged in the complaint. The mere fact that no grab handle was placed 10 or 12 inches above the cross-tree—the point where, according to plaintiff, one should have been—does not constitute negligence, if other grab handles were reasonably available to plaintiff. No standard of construction requires a grab handle at the place selected by plaintiff. Plaintiff, however, asserts that he was unable to reach the grab handles on the cross-tree. The physical facts are against him. The photographs introduced in evidence show beyond controversy that these grab handles were within reasonable reach. Therefore, there was no occasion for plaintiff to put his two fingers in the drilled hole of the plate while descending. It was not put there for that purpose. At first plaintiff was positive there were no grab handles on the side of the foremast, but after examining numerous photographs clearly indicating them—one of which he, himself, had taken—he finally asserted that he could not remember seeing such grab handles although he had been aloft on this foremast many times. The defendant also introduced in evidence the plans and specifications of the "New York" calling for grab handles on each side of the foremast a short distance above the cross-tree. The testimony further discloses that the vessel was built for the United States Shipping Board in accordance with such plans and specifications and that no change has ever been made so far as these grab handles are concerned. In the light of this evidence, the only reasonable deduction is that the grab handles on the

side of the foremast and on the cross-tree were within comparatively easy reach of the plaintiff.

■ In determining whether the evidence is sufficient to support the verdict in this case, we are governed by the federal rule as to whether there is substantial evidence tending to show a breach of duty on the part of the steamship company. The scintilla rule has no application. Can different reasonable deductions be drawn from the evidence in this case relative to the charge of negligence? We think not. The evidence conclusively shows that the defendant company exercised reasonable care in furnishing plaintiff with suitable devices and equipment for his protection, considering the hazardous work in which he was engaged as an able-bodied seaman.

The order of the trial court setting aside the judgment and granting a new trial is affirmed.

CAMPBELL, C. J., and ROSSMAN and KELLY, JJ., concur.