### KING *v.* NICHOLSON TRANSIT COMPANY.

1. TRIAL—DIRECTED VERDICT—EVIDENCE.
   It is the duty of the trial court to construe the testimony in a light most favorable to plaintiff when passing upon a defendant's motion for a directed verdict.

2. SAME—INFERENCES.
   Juries should be permitted to draw legitimate inferences from established facts.

3. SAME—VERDICTS—CONJECTURE.
   A verdict of a jury must not rest upon conjecture or guess.

4. SEAMEN—NEGLIGENCE—SUBSTANTIAL EVIDENCE.
   There must be substantial evidence tending to show a breach of duty on the part of the defendant steamship company

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 53 Am Jur, Trial, §§ 347–349; 3 Am Jur, Appeal and Error, §§ 944–947.
[4, 7] 48 Am Jur, Shipping, § 179 *et seq.,* §§ 212, 217.
[5] 53 Am Jur, Trial, §§ 357, 358, 360.

in an action for damages under the merchant seamen's act, in order that a plaintiff may recover thereunder (41 Stat 1007).

5   TRIAL—DIRECTED VERDICT—INFERENCES.

A trial judge must direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding.

6.  EVIDENCE—INFERENCES.

An inference loses its force when positive evidence is adduced.

7.  SEAMEN—GANGPLANK—NEGLIGENCE—PLEADING—EVIDENCE—SPECULATION.

Plaintiff failed to prove his cause of action for death of decedent porter due to negligence of defendant steamship company, where allegations that deceased fell from the gangplank, that it was defective or in an unsafe condition and that defendant knew of such conditions in time to make necessary repairs were without affirmative evidence in support thereof, hence jury must have resorted to speculation or conjecture in arriving at its verdict for plaintiff (41 Stat 1007).

Appeal from Wayne; Toms (Robert M.), J. Submitted January 2, 1951. (Docket No. 27, Calendar No. 44,968). Decided March 1, 1951. Rehearing denied June 4, 1951.

Action by Charles R. King, special administrator of the estate of Thomas C. Carroll, deceased, against Nicholson Transit Company, a Michigan corporation, to recover damages sustained in death of plaintiff's decedent. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Buell A. Doelle,* for plaintiff.

*Sparkman D. Foster* and *Foster, Lutz & Meadows* (*Allan B. Lutz* and *Raymond A. Ballard,* of counsel), for defendant.

SHARPE, J. This is an action brought by virtue of the merchant seamen's act of June 5, 1920, ch 250, § 33 (41 Stat 1007, 46 USCA, § 688), known as the Jones act, against defendant, Nicholson Transit Company, owner of the steamship James Watt, for the death of Thomas C. Carroll on December 31, 1945.

On the above date the steamship was in dry dock at River Rouge. After the ship entered the dry dock, the Great Lakes Engineering Works, owner of the dry dock, furnished a gangplank leading from the ship's deck to the top of the dry dock. The distance between the side of the ship and the dry dock which the gangplank spanned was estimated by various witnesses as being between 13 and 20 feet and the distance from the gangplank to the floor of the dry dock was estimated as being between 40 and 45 feet.

The gangplank was approximately 4 feet wide and consisted of planks secured together and running lengthwise, with small wooden cleats, spaced approximately 18 inches apart, running crosswise. It made an angle of incline from 5 to 25 degrees. The gangplank had a rope railing on each side, threaded through metal stanchions. The thickness of the rope was estimated as between $\frac{3}{4}$ to $1\frac{1}{2}$ inches. The stanchions were from 30 to 36 inches in height. The rope railings were not taut and sagged from 1 to 2 inches.

Deceased was in the employ of defendant as a porter to wait on the crew and the crew's mess. On December 31, 1945, between 5:30 and 6 p.m., deceased fell to the floor of the dry dock, his body landing about equal distance between the dry dock and the ship and in a position which corresponded to a position approximately midway on the overhead gangplank. He died as a result of injuries received in the

fall. No witnesses were available to testify as to the place where deceased was when he fell.

Plaintiff filed a declaration in which it is alleged that decedent came to his death as a result of:

1. Negligent failure to establish and maintain a proper gangway watch to assist and supervise plaintiff's decedent in making a safe passage over the gangplank;

2. Failure to select a safe and seaworthy gangplank;

3. Negligent choice of a lengthy gangplank, the boards and cross cleats of which were worn thin to permit an extensive vibration, and whose side-rails were "constructed of loose Manila line drawn through upright stanchions so as to deceive the user as to the amount of safety provided;"

4. Negligent installation of the gangplank at an angle in excess of 25 degrees from the horizontal;

5. Negligent failure to maintain gangplank by permitting an accumulation of ice and snow to remain upon the gangplank;

6. Improper lighting of gangplank; and

7. Negligent failure to warn plaintiff's decedent of the "unsafe, defective, poorly lighted, slippery, and dangerous condition of the said gangplank."

The cause came on for trial and at the close of plaintiff's testimony, defendant made a motion for a directed verdict upon the following grounds:

"(1) That there has been no evidence adduced at the trial that the defendant was in any way negligent.

"(2) There has been no testimony in the trial as to where this plaintiff decedent fell from.   *   *   *

"There has been no showing that reasonable care had not been used in connection with the gangplank or with the ship, and we say that under the proof offered by the plaintiff that no case has been made that can go to the jury, even though the gangplank was defective, unless that was brought to the attention of the defendant and (it) had an opportunity to

repair it, there still wouldn't be any negligence on his part."

Decision on the motion was reserved under the Empson act* and defendant rested without introducing any proof. The case was submitted to the jury for a general verdict together with special questions requested by the defendant.

The jury returned a verdict for plaintiff in the sum of $8,000 and answered the special questions as follows:

"*Question 1:* Was the death of plaintiff's decedent due to the unsafe condition of the gangplank leading from the James Watt to the drydock?

"*Answer:* Yes.

"*Question 2:* Did plaintiff's decedent slip and fall from the gangplank due to the slippery condition of said gangplank on account of ice and snow?

"*Answer:* Yes.

"*Question 3:* Was the decedent guilty of any negligence contributing to his fall?

"*Answer:* No.

"*Question 4:* If your answer to Question No 3 above is in the affirmative, have you determined what percentage of the decedent's negligence contributed to the accident?

"*Answer:* None.

"*Question 5:* If you have found the decedent was guilty of negligence, have you deducted his percentage of negligence from the total damages?

"Not answered."

Defendant made a motion for judgment notwithstanding the verdict and renewed the motion for a directed verdict. These motions were denied and judgment was entered on the verdict. No motion for a new trial appears to have been made.

---

* CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1949 Cum Supp § 27.1461 *et seq.*).—Reporter.

Plaintiff's claim is based upon the charge that deceased fell from the gangplank; and that such fall was caused by its unsafe condition. In coming to our conclusions in this case we have in mind that in passing upon defendant's motion for a directed verdict it is the duty of the trial court to construe the testimony in a light most favorable to plaintiff. See *Groening* v. *Opsata,* 323 Mich 73. We also have in mind that juries should be permitted to draw legitimate inferences from established facts. *Heppenstall Steel Co.* v. *Wabash Railway Co.,* 242 Mich 464.

The evidence upon which plaintiff relies to establish his case is as follows: That deceased called for help during his fall; that prior to deceased's fall there had been a slight rain followed by freezing temperature and snow; that the gangplank had not been swept or covered with cinders or ashes; that the gangplank was set at a 25-degree slope; and that the rope railings were slack and not adequate to prevent his fall into the chasm below.

Herman Booth, called by plaintiff for cross-examination under the statute,[*] testified that he was first mate of the ship and at that time in charge of the ship; that between 5:30 and 6 o'clock he heard cries of help and then a dull thud; that he ran out and saw Frenchy Challette standing in the center of the gangplank in a hysterical condition and saw a man lying at the bottom of the dry dock.

Henry Grant, a plant protection employee of the shipyard, testified for plaintiff as follows:

"*Q.* And what did you see?

"*A.* I saw him when he was about half way of the gangway going down.

"*Q.* About the middle of the gangway, you say?

"*A.* Well, no, it wouldn't be—it would be a little bit more towards the boat.

---

[*] CL 1948, § 617.64 (Stat Ann § 27.913).—REPORTER.

"*Q.* The man you saw going down?

"*A.* Yes, sir.

"*Q.* If I get your answer correctly, the man you saw going down was closer to the boat than he was to the drydock?

"*A.* Yes, sir.

"*Q.* Was there also another man on that gangplank at that time?

"*A.* Yes, sir. A little short fellow.

"*Q.* How close was he to the drydock?  *  *  *

"*A.* The little fellow was ahead.  *  *  *

"*Q.* Then you say you saw the body in the air, is that right?

"*A.* Yes, sir. About half way from the gangplank to the dock, about the top of the dock.  *  *  *

"*Q.* Did you ever at any time see the man who fell, while he was on the gangplank?

"*A.* No, sir.

"*Q.* You are not able to tell us from where he fell?

"*A.* Well, he wasn't very far from the boat, from the boat to the gangplank.

"*Q.* He wasn't very far away from the boat?

"*A.* No."

Mr. Grant also testified that there was no snow on the dry dock; and that the lights were on.

Wilbur W. Oak, the meteorologist in charge of the Weather Bureau in Detroit, testified that the temperature between 5 and 6 p.m., of December 31, 1945, was 20 degrees; that light snow began at 6:24 a.m., of the 31st and was continuous the remainder of the day up to midnight; and that less than one-tenth of an inch of snow was present as of 6 p.m., on December 31, 1945.

The condition of the gangplank at the time decedent came to his death is of primary importance. Plaintiff urges that no ashes or cinders were placed on the gangplank. In view of the fact that the evidence fails to show snow or ice on the gangplank at the time decedent fell, there would be no need for

cinders or ashes being placed on the gangplank. It is also urged that there was a sag in the ropes, but the record contains no evidence that deceased met his death because of the condition of the rope.

The law is well settled that a case should not be submitted to the jury where a verdict must rest upon a conjecture or guess. See *Fuller* v. *Ann Arbor Railroad Co.*, 141 Mich 66 (18 Am Neg Rep 489); *Powers* v. *Pere Marquette Railroad Co.*, 143 Mich 379; and *Scott* v. *Boyne City, Gaylord & Alpena Railroad Co.*, 169 Mich 265.

In the case of *Lieflander* v. *States Steamship Company,* 149 Or 605 (42 P2d 156), a case brought under the Jones act, the court stated:

"In determining whether the evidence is sufficient to support the verdict in this case, we are governed by the Federal rule as to whether there is substantial evidence tending to show a breach of duty on the part of the steamship company. The scintilla rule has no application."

*Chicago M. & St. P. R. Co.* v. *Coogan,* 271 US 472 (46 S Ct 564, 70 L ed 1041), involved a death action under the Federal employers' liability act, whose provisions are incorporated by reference into the Jones act. The court said:

"It is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding. *Baltimore & Ohio R. Co.* v. *Groeger,* 266 US 521, 524 (45 S Ct 169, 69 L ed 419). When the evidence and the conclusions which a jury might fairly draw from the evidence are taken most strongly against the petitioner the contention of respondent that the bent pipe caused or contributed to cause the death is without any substantial support. The record leaves the matter in the realm of speculation and conjecture. That is not enough. *Pawling* v. *United*

*States,* 4 Cranch (8 US) 219, 221 (2 L ed 601); *Patton* v. *Texas & Pacific Railway Co.,* 179 US 658, 663 (21 S Ct 275, 45 L ed 361); *Looney* v. *Metropolitan Railroad Co.,* 200 US 480, 488 (26 S Ct 303, 50 L ed 564); *St. Louis & Iron Mountain & S. R. Co.* v. *McWhirter,* 229 US 265, 282 (33 S Ct 858, 57 L ed 1179); *St. Louis-San Francisco R. Co.* v. *Mills,* 271 US 344 (46 S Ct 520, 70 L ed 979), decided May 24, 1926."

In the case at bar an inference could be drawn that there was snow on the gangplank from the fact that in that vicinity one-tenth of an inch of snow fell during the day, but an inference loses its force when positive evidence is adduced. In the case at bar there is positive evidence that the gangplank was free of snow and ice at or about the time of deceased's death. An inference could be drawn that deceased fell from the gangplank from the location of his body on the floor of the dry dock, but there is evidence that had he fallen from the dry dock or the ship he could have landed where he did. There is no affirmative evidence that deceased fell from the gangplank. Plaintiff bases his cause of action upon an inference that deceased fell from the gangplank, an inference that the gangplank was defective or in an unsafe condition, and an inference that defendant company knew of such conditions in time to make necessary repairs. A jury, in awarding plaintiff a verdict, must have resorted to speculation and conjecture. Judgments cannot stand upon speculation or conjecture. The trial court was in error in denying defendant's motion for a directed verdict.

The judgment is set aside without a new trial, with costs to defendant.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred.