DANIEL *v.* McNAMARA.

1. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE—JUDGMENT.

The question on defendant's motion for a directed verdict is not one of preponderance of the evidence introduced by the plaintiff, but whether plaintiff has presented sufficient evidence to go to a jury on a material question of fact, which, if determined in plaintiff's favor, would entitle him to a judgment.

2. SAME—DIRECTED VERDICT—EVIDENCE.

Proofs and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff on appeal from order directing verdict for defendant.

3. PHYSICIANS AND SURGEONS—MALPRACTICE—LEG CAST.

Holding of trial court that plaintiff patient had failed to present sufficient evidence to go to jury in malpractice action against physician on issue of improper construction and application of leg cast and subsequent treatment of affected area and impropriety of orderly's actions in removing the 2 sections of the cast from the trash can and reapplying them too tightly to plaintiff's leg *held,* correct under record presented.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 336, 355, 357, 390.
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3, 4] 41 Am Jur, Physicians and Surgeons § 131.
[5] 41 Am Jur, Physicians and Surgeons §§ 84, 87, 125, 128.
[6, 8] 41 Am Jur, Physicians and Surgeons § 129.
[7] 41 Am Jur, Physicians and Surgeons §§ 78, 79, 82, 84.
[9] 41 Am Jur, Physicians and Surgeons §§ 128, 132.
[10] 29 Am Jur 2d, Evidence §§ 264, 265; 30 Am Jur 2d, Evidence § 1091.
[11, 12] 41 Am Jur, Pleading §§ 288, 291, 293, 296, 297, 309, 310.
[13] 53 Am Jur, Trial §§ 336, 358, 390, 396, 398.
[14] 41 Am Jur, Physicians and Surgeons §§ 128, 129, 132; 53 Am Jur, Trial § 403.
[15] 22 Am Jur 2d, Damages § 109.
[16] 20 Am Jur 2d, Costs § 16.

4. SAME—MALPRACTICE—SKIN GRAFT.

Holding of trial court that plaintiff patient had not presented sufficient evidence to go to jury in malpractice action against physician on issue of improper performance of third skin graft operation *held*, error under record presented.

5. SAME—MALPRACTICE—EVIDENCE.

An action against a physician or surgeon for malpractice cannot be submitted for jury determination in the absence of qualified testimony showing or tending to show that what he did was contrary to the practice in that or similar communities, or that he omitted to do something which was ordinarily done in that or similar communities.

6. SAME—PROFESSIONAL SKILL.

*Unskillfulness, negligence,* or *failure to do that which ought to be done* by one who professes special knowledge strictly involving professional skill and attention must be shown by the testimony of those learned in such matters in order to recover in an action for malpractice.

7. SAME—NEGLIGENCE—EMERGENCY.

Ordinary rules for determining negligence do not prevail in malpractice action in assessing conduct, like that of a surgeon, resting upon judgment, opinion, or theory; when one acts according to his best judgment in an emergency, he is not chargeable with negligence.

8. SAME—MALPRACTICE—NEGLIGENCE—EVIDENCE—SURGERY.

Expert testimony is not needed to send issue to the jury in action for malpractice where nontreated parts of the body are inadvertently injured by surgeon, where it is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery.

9. SAME—MALPRACTICE—NEGLIGENCE—EVIDENCE.

Injury to heel caused by abrasion by cast during treatment for broken ankle is not a situation where the treatment was extraneous to portion of body injured since the heel was subject to the cast, and consequently the injury standing alone is insufficient to go to jury in absence of evidence of improper or negligent performance by the doctor by community standards.

10. EVIDENCE—CIRCUMSTANTIAL—INFERENCES—CONJECTURE.

A jury is limited to drawing reasonable inferences from facts established by circumstantial evidence, and may not be asked

to conjecture or speculate from facts not supporting a reasonable inference.

11. PLEADING—AMENDMENT—PREJUDICE.

Denial by trial court of plaintiff's motion to amend pleadings to include issue not raised by pleadings but tried, so as to make pleadings conform to evidence, is proper, where plaintiff fails to satisfy court that the amendment over objection would not prejudice the defense (GCR 1963, 118.3).

12. PHYSICIANS AND SURGEONS—MALPRACTICE—PLEADING—AMENDMENT—OBJECTION—PREJUDICE.

Trial court's denial of plaintiff's motion to amend complaint in malpractice action to permit introduction of evidence of orderly's negligence in performing certain acts with respect to cast on plaintiff's leg *held,* not an abuse of discretion, where matter had not been pleaded, and was objected to by defendant, trial court was not satisfied that an amendment over objection would not serve to prejudice the defendant, and the orderly had died before trial.

13. SAME—MALPRACTICE—DIRECTED VERDICT FOR DEFENDANT.

Directed verdict for defendant in suit for malpractice for improper construction and application of a cast to broken ankle which caused ulceration of heel, and for improper actions of orderly in removing and replacing cast *held,* proper, where there was no testimony that the defendant failed to exercise professional judgment in accord with standard of care of medical physicians in community or similar communities at time of application of cast, and where issue concerning removal and replacement of cast by orderly was not raised before trial.

14. SAME—MALPRACTICE—DIRECTED VERDICT FOR DEFENDANT.

Directed verdict for defendant on question of malpractice in performing a third skin graft on a heel *held,* error, where expert testified that he would not have attempted a third skin graft under the circumstances, and that it would not be the usual procedure in the community to attempt a third skin graft, and plaintiff alleged that as result of malpractice she had incurred expenses and suffered pain.

15. DAMAGES—PAIN AND SUFFERING—APPEAL AND ERROR.

Allowance for pain and suffering rests in sound discretion of the trier of the facts.

16. Costs—Malpractice—Neither Party Prevailing in Full.
   No costs are allowed in action for malpractice where neither
   party prevails in full.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted Division 1 March 7, 1967, at Detroit. (Docket No. 305.) Decided March 27, 1968.

Complaint by Ora Lee Daniel against J. M. McNamara for malpractice. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed in part and reversed for a limited new trial.

*Charfoos & Charfoos,* for plaintiff.

*Moll, Desenberg, Purdy, Glover & Bayer,* for defendant.

J. H. Gillis, J. This is a malpractice action. Plaintiff, Ora Lee Daniel, while in her home turned her ankle and suffered a tri-malleolar fracture of her left ankle on April 7, 1960. She was taken to the Highland Park General Hospital by the police, and defendant, Dr. J. M. McNamara, was assigned to the case. Only plaintiff's left ankle was injured. Approximately 2 days later the defendant applied a short leg cast extending over the heel of the left foot leaving the toes exposed. During the next 6 or 7 weeks the plaintiff made several complaints to hospital personnel and to the defendant to the effect that she was in pain and uncomfortable. The exposed toes were checked regularly and indicated no discoloration or abnormality. At the end of this period, in accord with instructions from the defendant, the plaintiff returned to the hospital in order to have the injured leg X-rayed to determine whether the fracture had healed sufficiently to allow removal of the cast. A hospital

orderly, George Bailey, cut the cast into two segments and removed it. The orderly deposited the cast in the trash can. Plaintiff testified that after the cast was removed she discovered the back of her heel was a reddish brown and appeared swollen and inflamed. Before she left the hospital and shortly after the X rays had been completed, the orderly removed the two segments of the cast from the trash can and reapplied them to plaintiff's leg, taping them in place.

During the next few days, plaintiff complained that the cast was very uncomfortable and rubbed against her swollen left heel. Defendant examined the X rays and advised plaintiff by telephone to remove the cast. After she did so, plaintiff noted that the heel was swollen and appeared to be draining. It was subsequently determined that the heel had become ulcerated. Thereafter, the defendant performed three separate skin grafts to the heel, each of which involved the removal of skin from the plaintiff's thigh. The heel did not satisfactorily respond and remained in the sensitive and discolored condition.

Plaintiff's action claimed damage resulting from the ulcerated condition of the heel, its subsequent aggravation by the hospital orderly, and from the third skin graft, which plaintiff contends was improperly performed.

At the conclusion of plaintiff's proofs, the trial court directed a verdict against the plaintiff. To summarize, plaintiff alleged three instances of malpractice: (1) improper construction and application of the cast and subsequent treatment of the affected area; (2) the improper actions of the orderly in removing the two sections of the cast from the trash can and reapplying same too tightly to plaintiff's leg; and (3) improper performance of the third skin graft operation.

On a motion for directed verdict, the question is not one of the preponderance of the evidence introduced by the plaintiff, but whether plaintiff has presented sufficient evidence to go to a jury on a material question of fact, which, if determined in plaintiff's favor, would entitle her to a judgment.

"On this review of a directed verdict against plaintiff the proofs and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff." *Humenik* v. *Sternberg* (1963), 371 Mich 667, 669.

Our view of the entire record in this light has led us to the conclusion that the trial court was correct in its ruling as to the first two issues and in error as to the third skin graft operation.

It is not disputed that plaintiff's ulcerated condition occurred while the cast was on her leg. Plaintiff's medical experts testified that they were unable to discover anything in particular in the cast that could have caused the ulcer. On cross-examination, Dr. Lawrence Katz, a witness produced by the plaintiff, testified:

"*Q*. Did you examine the parts of the cast also, doctor?

"*A*. Yes.

"*Q*. Where did you get the parts of the cast?

"*A*. The patient brought them with her.

"*Q*. Will you tell us what you found upon examination of the cast?

"*A*. There were no ridges or deformities of the cast to explain the cause for the ulceration. The heel of the cast was softened as a result of pressure which the patient had apparently applied on it during the six weeks she wore the cast, but there were no rough edges which would push into the patient. The cast was, as I remember, a foam rubber padded cast."

Both Dr. Katz and Dr. Chauncey Jack Hipps, another medical expert produced by plaintiff, testified it was proper medical practice to apply a cast to a fracture of this nature.

In the record presented to this Court there is a complete absence of any testimony that the defendant failed to exercise his professional judgment in accord with the standard of care of medical physicians in the community or similar communities in which he practiced at the time he applied the cast and up to the time the cast was removed. Absent such showing, no question was presented for the jury's consideration. As the Supreme Court held in *Lince* v. *Monson* (1961), 363 Mich 135, 140, 141:

"In a case involving professional service the ordinary layman is not equipped by common knowledge and experience to judge of the skill and competence of that service and determine whether it squares with the standard of such professional practice in the community. For that, the aid of expert testimony from those learned in the profession involved is required. As this Court said in *Zoterell* v. *Repp,* 187 Mich 319, 330:

" 'As to those matters of special knowledge strictly involving professional skill and attention, unskillfulness, negligence, or failure to do that which ought to be done must be shown by the testimony of those learned in such matters.

" 'In conduct, like that of a surgeon, resting upon judgment, opinion, or theory, the ordinary rules for determining negligence do not prevail. *Luka* v. *Lowrie,* 171 Mich 122 (41 LRA NS 290); *The Tom Lysle* (WD Pa), 48 F 690; *Brown* v. *French,* 104 Pa 604; *Williams* v. *LeBar,* 141 Pa 149 (21 A 525). One reason for the rule is that when one acts according to his best judgment in an emergency, he is not chargeable with negligence. *Luka* v. *Lowrie, supra; Staloch* v. *Holm,* 100 Minn 276 (111 NW 264,

9 LRA NS 712); *Williams* v. *Poppleton,* 3 Or 139; 30 Cyc, p 1587; *Sherwood* v. *Babcock,* 208 Mich 536.

" 'In order to submit a case of alleged malpractice to the jury, the plaintiff must produce medical testimony to the effect that what the attending physician or surgeon did was contrary to the practice in that or similar communities, or that he omitted to do something which was ordinarily done in that or similar communities.' *Delahunt* v. *Finton,* 244 Mich 226, 229, 230."

Plaintiff's argument at trial was a persistent attempt at a back door entrance to a circumstantial showing that the ulcerated condition would not have occurred but for some negligence on the part of the defendant doctor. The plaintiff, in effect, argued the doctrine of *res ipsa loquitur.*

In order to obviate unnecessarily lengthening this opinion, it will suffice to refer the bench, the bar, and counsel for the litigants to the succinctly written opinion by Justice BLACK in *Skeffington* v. *Bradley* (1962), 366 Mich 552. Therein lies the Michigan view on this issue.

"What's in a name? That which we call a rose By any other name would smell as sweet." Shakespeare.[1]

While we have apparently not adopted the rule *res ipsa loquitur* in this State, we have consistently applied its principles and again in the interest of brevity we refer the reader to *Higdon* v. *Carlebach* (1957), 348 Mich 363, 374, 375.

At trial, as in this Court, plaintiff urged that the following language from *Higdon* v. *Carlebach,* *supra,* at p 374, allowed him to go to the jury on the basis of the unfavorable result standing alone:

"The exception so adopted will apply to cases where healthy and undiseased parts of the body

---

[1] Romeo and Juliet, act 2, scene 2.

requiring no treatment are injured, during the professional relationship, under circumstances where negligence may legitimately be inferred."

The quotation ends with "as in these Higdon Cases."

In that case, Sandra Higdon, during the course of dental treatment by defendant-dentist, suffered a laceration of her tongue which required sutures and subsequent hospitalization. The dentist was using an electrically driven disc to prepare a place for a band between Sandra's teeth. During the procedure the tongue was cut. Plaintiff claimed she did not move. Defendant contended she had involuntarily jerked her head causing the tongue to contact the disc. Thus an either-or proposition was propounded—either the patient jerked or the defendant slipped.

Justice BLACK, writing for four justices, neither accepted nor rejected the doctrine of *res ipsa loquitur* but merely applied the rule of circumstantial evidence to which our courts have been committed. Under the facts of this case,

"It was unnecessary for the plaintiffs to show that it was not good professional practice (in the locality) for a dentist to cut deeply  \*  \*  \*  into a patient's tongue while working on that patient's teeth." *Higdon* v. *Carlebach, supra,* p 377.

Indeed the cases cited in this opinion deal with injuries to innocent portions of the anatomy during professional treatment of other portions but the rule is not necessarily so limited. Justice CARR, writing for the remaining four members, stated that under this set of facts a jury could infer negligence by defendant depending on whom they believed moved and caused the injury. This opinion concluded that this was not a malpractice case in the true sense, but rather a question of due care in the

use of a mechanical appliance on the person of another.

"The question at issue is whether there was in fact negligence constituting the proximate cause of the injury. Bearing in mind the nature of the question, we think the cases fairly fall within the line of decisions in this State in which it has been recognized that expert testimony is not essential to the establishing of a cause of action for damages resulting from negligence in cases of the character here involved." *Higdon* v. *Carlebach, supra,* p 378.

From the opinions thus presented in *Higdon,* two parallel lines of authority appear to converge at the imaginary horizon, each of which stands for the nonnecessity of expert testimony under certain sets of facts. One line suggests that an issue may go to the jury without expert testimony where non-treated parts of the body are inadvertently injured by the practitioner where "it is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery." *Higdon,* p 372. This is the line followed by the justices signing with Justice BLACK in *Higdon.* The rule appears broader on its face than it truly is in practice, for once medical judgment enters the picture the matter can no longer be said to be within common knowledge. Thus this approach is well suited to a fact situation such as that in *Higdon,* or where a portion of a child's tongue was inadvertently removed during an operation on adenoids, (*Evans* v. *Roberts* [1915], 172 Iowa 653 [154 NW 923]), or where during removal of a child's tonsils the jaw was fractured and a tooth knocked out (*Brown* v. *Shortlidge* [1929], 98 Cal App 352 [277 P 134]).

The theoretical base of this view is that even though the injury occurs during medical procedures, beyond a point which a layman can comprehend, the extraordinary nature of the injury casts the onus on the practitioner to explain.

Justice CARR's view of the same problem was that mere inadvertence, a slip of an instrument, forgetting a sponge, and the like, are disassociated from the medical treatment proper, and if negligent, constitute ordinary negligence. We have adopted this latter view where a hospital patient was injured through the inadvertence of one of the hospital's employees. *Fogel* v. *Sinai Hospital of Detroit* (1965), 2 Mich App 99; *Gold* v. *Sinai Hospital of Detroit, Inc.* (1966), 5 Mich App 368. In both cases it was asserted that because the patient was undergoing professional treatment in a hospital the plaintiff must introduce evidence as to the standard of care in the community. In both cases we held that a case of ordinary negligence was presented, not a case of malpractice.

A brief review of the case authority will serve to differentiate plaintiff's case from those in which no expert testimony was necessary to make out a jury case. In *Taylor* v. *Milton* (1958), 353 Mich 421, the defendant physician left a 12-inch needle-like instrument in the patient's bladder and concealed this fact. No expert testimony was required to go to the jury. The Court upheld the instruction given by the trial judge in that case:

"I charge you that there is no question of skill or judgment, no question of practice beyond the knowledge of laymen, because you are only considering the one question: Did he or did he not conceal the presence of this filiform in the bladder of this plaintiff." *Taylor* v. *Milton, supra,* p 426,

Where defendant-physician allegedly sutured over
a folded gauze pad, no expert testimony was neces-
sary to go to the jury on whether or not he did
sew it in. If it was sewn in, it is a matter of com-
mon knowledge that this was not good medical
practice. *Winchester* v. *Chabut* (1948), 321 Mich
114. Likewise in the leading case of *LeFaive* v.
*Asselin* (1933), 262 Mich 443, no expert testimony
was necessary on the issue of whether or not the
physician left a needle in the plaintiff's side during
an appendectomy.

Thus the entire line of cases standing for the in-
stant proposition is built upon the now famous
words of Justice WIEST in *Ballance* v. *Dunnington*
(1928), 241 Mich 383, 387, as dealing with alleged
acts which "even the merest tyro" would know were
improper.

In the present case although plaintiff asserts that
the heel was not being treated, it was necessarily
subject to the cast as part of the regular treatment
of the ankle fracture.[2] This is not a situation where
the treatment was extraneous to the portion of the
body injured, and consequently the injury standing
alone is insufficient to go to the jury in the absence
of evidence of improper or negligent performance
(by community standards) on the part of Dr. Mc-
Namara. Likewise, the propriety of Dr. McNa-
mara's reactions to plaintiff's complaints of pain
and his subsequent actions are squarely within the
realm of medical judgment and require some med-
ical expertise to show that defendant's judgment
was negligent. In short, as the trial court con-
cluded, to allow the injury alone to go to the jury
only begs speculation as to causation and negligence
on the part of the defendant. Under any rule of

---

[2] Defense counsel argued that this can be compared to the surgeon
who necessarily must cut through healthy abdominal tissue in order
to perform an appendectomy.

circumstantial proofs, the jury is limited to draw-
ing reasonable inferences from established facts and
may not be asked to conjecture or speculate from
facts not supporting a reasonable inference. See
*King* v. *Nicholson Transit Company* (1951), 329
Mich 586.

Plaintiff further contends that George Bailey, an
orderly at Highland Park General Hospital at the
time plaintiff received treatment, aggravated the
ulcerous condition on her heel when Bailey retrieved
the sections of the cast from the trash receptacle
and reapplied them to the leg. Many attempts were
made during the course of trial to introduce evi-
dence as to Mr. Bailey's actions, ostensibly on an
agency theory. All such offers were met with ob-
jection by defense counsel which were sustained by
the court. Putting aside the substantive agency
question, the basis of the rulings rested on the fact
that plaintiff did not plead Mr. Bailey's actions at
all, nor did she allege that Mr. Bailey's actions
constituted malpractice on the part of Dr. Mc-
Namara.

At the close of plaintiff's proofs, her counsel
moved to amend the pleadings to conform with the
proofs in order to bring in Mr. Bailey's actions on
the basis that an agency existed. The complaint
filed in this cause and the pretrial statement makes
no mention of Mr. Bailey, nor of any acts by agents
of the defendant or of the claims of negligence
arising out of such acts.

The motion to amend at this point in the proceed-
ings was made pursuant to GCR 1963, 118.3, which
provides:

"When issues not raised by the pleadings are
tried by express or implied consent of the parties,
they shall be treated in all respects as if they had
been raised in the pleadings. In such case an

amendment of the pleadings to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, amendment to conform to such proof shall not be allowed unless the party desiring amendment satisfies the court that the amendment and the admission of such evidence would not prejudice the objecting party in maintaining his action or defense upon the merits."

In this case each attempt to introduce nonpleaded issues concerning the removal and replacement of the cast by Mr. Bailey was met with objection by the defense. Under the above court rule, plaintiff must satisfy the trial judge that an amendment over objection will not serve to prejudice the defense. We find no such showing to have been made in this case and find therefore that the trial court did not abuse his discretion in denying plaintiff's motion. The issue concerning the removal and replacement of the cast by Mr. Bailey was not raised prior to trial. Mr. Bailey died prior to trial. It would be a most strained interpretation of the rule which would require the granting of the motion to amend.

The final aspect with which we are concerned on this appeal is the alleged malpractice in performing the third skin graft on plaintiff's heel. Medical testimony indicated that the first graft was in accord with recognized practice and in fact recommended practice, and that the second graft was a question of judgment on the part of the treating physician.

As to the third skin graft operation, the defense argues that assuming—*arguendo*—the operation was not performed in accordance with accepted medical standards in the community, there was no medical testimony as to damages, if any, suffered by plain-

tiff as a proximate result of the third graft operation.

The trial court stated from the bench:

"There is no testimony that the improper third graft delayed the healing. There is no testimony that there would have been a different result if another graft had been done.

"And there is no medical testimony of any kind that I can find, * * * that says that a proper third skin graft here would have presented a different result.

"Therefore, if the jury were to attempt to assess damages on the basis of negligence in the improper third skin graft, they would have to be speculating, because there is nothing upon which they can do so."

The record shows the following in relation to the third skin graft. An expert witness testified for the plaintiff that he would not have attempted the third skin graft under the factual situation in this case and that it would not be the usual procedure in this community to attempt a third skin graft. This same witness testified that the third skin graft operation, however, did not aggravate the infection in the heel.

Plaintiff testified that she made a special trip to St. Mary's Hospital in Livonia, Michigan, for the third skin graft operation and that she was a patient therein for approximately 1 week. While there the plaintiff testified that skin was taken from her thigh above the site where the 2 previous skin grafts had been removed and that such area of skin was approximately 2 inches by 2 inches. She testified that the day after this operation the area became tender and painful and that such area, along with the area where the first 2 skin grafts were taken, is still tender and sensitive some 2 years after such operation. In the pleadings plaintiff has

a general allegation that there was malpractice by the defendant, and as a result thereof she incurred expenses and suffered pain as a result of such malpractice and continues to suffer from such pain. This testimony is sufficient to raise a question of fact for the trier of the facts to weigh. It is rather apparent from a reading of the transcript that the thrust of the main allegation of malpractice is aimed at establishing malpractice arising out of the alleged improper application of the cast resulting in an ulcerated condition. The skin graft operations appear as an incidental allegation but the pleadings and testimony establish a question of fact as to whether the defendant doctor was guilty of malpractice in performing the third skin graft operation. The plaintiff has alleged in a general allegation that as a result of the malpractice of the defendant doctor she has suffered pain and will continue to suffer pain in the future.

There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed, for example, for pain and suffering must always rest in the sound judgment of the triers of the fact. See *Watrous* v. *Conor* (1934), 266 Mich 397.

The action of the trial court is affirmed as to the directed verdict except as to the allegation of malpractice pertaining to the third skin graft operation. The trial court is directed to set aside the verdict of no cause of action and a new trial ordered limited, however, to the sole issue of the alleged malpractice in performing the third skin graft operation.

No costs, neither party having prevailed in full.

LESINSKI, C. J., and LEVIN, J., concurred.