### McPHEE *v.* BAY CITY SAMARITAN HOSPITAL.

1. PHYSICIANS AND SURGEONS—NEGLIGENCE—PROFESSIONAL SKILL—STANDARD OF CARE.

   A treating physician is responsible in damages for unfortunate results when it is shown that he has departed from that standard of care which is known as customary medical practice.

2. SAME—NEGLIGENCE—STANDARD OF CARE—BURDEN OF PROOF.

   Burden of proving the standard of care of customary medical practice in malpractice action against a physician is upon the plaintiff and the proof must usually be by expert testimony.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons § 91.
[2] 41 Am Jur, Physicians and Surgeons § 125 *et seq.*
[3] 41 Am Jur, Physicians and Surgeons § 129.
   Necessity of expert evidence to support an action for malpractice against a physician or surgeon. 81 ALR2d 597.
[4] 41 Am Jur, Physicians and Surgeons §§ 131, 132.
[5] 41 Am Jur, Physicians and Surgeons § 73.
[6] 41 Am Jur, Physicians and Surgeons §§ 108–110.
[7] 20 Am Jur 2d, Costs § 15.

3. Same—Malpractice—Testimony of Treating Physician—Expert Testimony.

Testimony of defendant surgeon who had performed more than 100 thyroidectomies prior to plaintiff's operation in which the laryngeal nerve was cut, which was the subject of a malpractice action, that the laryngeal nerves are within the field of operation in a thyroidectomy but can and should be avoided, was sufficient evidence tending to show the standard of care to be exercised to establish a prima facie case for plaintiff.

4. Same—Malpractice—Directed Verdict—Weight of Evidence.

Directed verdict for defendant surgeon in malpractice action for injuring laryngeal nerve in performing thyroidectomy, where expert testimony tended to show that defendant's treatment contributed to paralysis, was improper as the weight to be accorded that testimony should have been evaluated along with other proofs by the jury.

5. Same—Possible Results of Operation—Advice to Patient of Possible Results.

The general practice customarily followed by the medical profession in a locality determines whether an operative surgeon should advise his patient of all possible results of a proposed operation before performing it.

6. Same—Informal Consent—Unexpected Result.

Lack of informed consent to surgical operation cannot be proximately related to plaintiff's damage in malpractice action when a patient is told what to expect in the way of results but the result is in the nature of the unexpected and caused by a negligent act.

7. Costs—Malpractice—Thyroidectomy—Neither Party Prevailing in Full.

No costs are allowed in action for malpractice in performing thyroidectomy where neither party prevails in full.

Appeal from Bay; Dardas (Leon R.), J. Submitted Division 3 December 5, 1967, at Grand Rapids. (Docket No. 2,007.) Decided March 29, 1968. Rehearing denied May 28, 1968.

Declaration by Helen McPhee against Bay City Samaritan Hospital and Culver M. Jones, M.D., for

malpractice.  Defendant Jones' motion for directed
verdict granted.  Action against Bay City Samari-
tan Hospital dismissed with prejudice upon plain-
tiff's motion.  Plaintiff appeals.  Reversed and re-
manded for new trial.

*Cicinelli, Mossner, Majoros, Harrigan & Alex-
ander,* for plaintiff.

*Moll, Desenberg, Purdy, Glover & Bayer (Richard
A. Kitch,* of counsel), for defendant.

Burns, J.  Plaintiff appeals a judgment granting
defendant Jones' motion for a directed verdict.
Plaintiff's cause of action against the defendant Bay
City Samaritan hospital was dismissed with preju-
dice upon plaintiff's motion.

This case is fundamentally a malpractice action
against Doctor Culver M. Jones who on March 14,
1957, removed a substantial portion of plaintiff's
thyroid gland.  Plaintiff's complaint alleged that
Doctor Jones violated his duty to "use sufficient
care, caution and skill in the performance of the
thyroidectomy operation on plaintiff so as not to
cut, sever, injure, or destroy any portion of the
laryngeal nerve."

Prior to the date of the thyroidectomy plaintiff
had a woman's normal voice.  During the operation
appellee noted that plaintiff's laryngeal nerves were
normal in appearance.  After the operation plaintiff
and others noticed that her voice was hoarse, rough,
or harsh and much different than it had been before
the operation.  Doctor Jones was informed of the
change and he advised her that it would clear up.
However, the condition allegedly persisted to the
date of the trial—almost 9 years.  Plaintiff consulted
Doctor Adam Gamon who diagnosed her problem as

laryngeal nerve paralysis. This diagnosis was confirmed by doctors at the Henry Ford hospital and the University of Michigan hospital.

Plaintiff's complaint against appellee consisted of 4 counts: negligence, fraudulent concealment, breach of warranty, and assault and battery. Although the trial judge considered and discussed each one of these theories in directing a verdict for appellee, the litigants have primarily confined their arguments on appeal to the issues premised upon the trial court's finding of a lack of evidence regarding the applicable standards of care.

A treating physician is responsible in damages for unfortunate results when it is shown that he has departed from that standard of care which is known as customary medical practice. *Skeffington* v. *Bradley* (1962), 366 Mich 552; *Zoterell* v. *Repp* (1915), 187 Mich 319. The burden of proving that standard of care is upon the complainant, and such proof must come, in most cases, with the aid of expert testimony from those learned in the profession. *Lince* v. *Monson* (1961), 363 Mich 135; *Skeffington* v. *Bradley*, *supra*.

Doctor Jones, who had performed "more than a hundred" thyroidectomies prior to plaintiff's operation, certainly was qualified to testify regarding the requisite standard of professional practice in the community. He stated that although the laryngeal nerves are within the field of operation in a thyroidectomy, the nerves "can be avoided and should be avoided." Without belaboring the point, we hold that the appellee's own testimony was, for the purpose of this case, sufficient evidence tending to show the standard of care to be exercised and that the plaintiff could rely on this testimony in attempting to establish a *prima facie* case.

We also find that there was expert testimony tending to show a violation of appellee's duty to avoid

injuring plaintiff's laryngeal nerves. Plaintiff's expert witness, Doctor Gamon, admittedly did not couch his opinion of defendant's culpability in the most desirable, explicit manner, but nevertheless the following excerpts of his testimony clearly indicate the doctor's belief that plaintiff's paralysis was caused by injury inflicted by appellee during the thyroidectomy:

"*Q.* [*Attorney for plaintiff*]  As a result of a complete physical examination did you arrive at any impression of the diagnosis as far as these various complaints were concerned?

"*A.* My impression was she had a thyroidectomy with recurrent laryngeal nerve paralysis and hoarseness which I felt accounted for her strangling.
* * *

"*Q.* [*Attorney for appellee*]  The reason you suggested that chest X ray was you felt it could have been a deviation of trachea? Is that correct? .

"*A.* I wondered if there was something deviating the trachea to cause this hoarseness, laryngeal nerve paralysis to be certain it was nothing different from what I originally thought, *the thyroidectomy caused it.* * * *

"*Q.* It is my understanding the reason you have at least concluded there was a severance of the nerve during the operation was due to the fact she had had a thyroidectomy and this causes most of the paralysis of the nerve.

"*A.* I did not indicate severance—I meant injury or damage to the nerve—yes." (Emphasis supplied.)

The trial court was unduly concerned with the absence of testimony regarding the existence of a "severance" or "cut" of the nerves in question. A "severance" or "cut" did not have to be shown to support plaintiff's complaint, the relevant portion of which is quoted above, if expert testimony tended

to show that appellee's treatment contributed to the paralysis. Since Doctor Gamon testified that there was injury attributable to the operation conducted by appellee, the weight to be accorded that testimony should have been evaluated along with other proofs by the jury. The trial court should not have taken this function from the jury by directing a verdict against the plaintiff on this aspect of the case.

The trial court was correct, however, in holding that there was no jury question regarding appellee's alleged failure to obtain plaintiff's "informed consent." Whether a surgeon before operating should advise his patient of all possible results, thereby permitting him to intelligently give or withhold consent to the operation, seems to be determined with reference to the general practice customarily followed by the medical profession in the locality. *Roberts* v. *Young* (1963), 369 Mich 133 (99 ALR2d 1330); *Miles* v. *Van Gelder* (1965), 1 Mich App 522.

Although plaintiff testified that the doctor did not explain anything to her concerning the thyroidectomy prior to the operation, there is nothing in the record showing that it was customary practice to discuss the possibility of injuring the laryngeal nerves. The appellee did testify that a patient is told "what to expect in the way of results," but when the result is in the nature of the unexpected and caused by an allegedly negligent act, as in this case, the lack of "informed consent" cannot be proximately related to plaintiff's damage.

Reversed and remanded for a new trial. Neither party prevailing in full, no costs.

Holbrook, P. J., and J. H. Gillis, J., concurred.