Ilene **PERIN,** Appellant,

v.

Robert A. **HAYNE,** Appellee.

No. 55949.

Supreme Court of Iowa.

Sept. 19, 1973.

Rehearing Denied Oct. 11, 1973.

Marlyn S. Jensen, Des Moines, for appellant.

Eugene Davis and Steven C. Cross, Des Moines, for appellee.

Heard by MOORE, C. J., and MASON, REYNOLDSON, HARRIS and Mc-CORMICK, JJ.

McCORMICK, Justice.

This is an appeal from a directed verdict for a doctor in a malpractice action. We affirm.

The claim arose from an anterior approach cervical fusion performed on plaintiff Ilene Perin by defendant Robert A. Hayne, a Des Moines neurosurgeon, on November 26, 1968. The fusion was successful in eliminating pain, weakness and numbness in plaintiff's back, neck, right arm and hand caused by two protruded cervical discs, but plaintiff alleged she suffered paralysis of a vocal chord because of injury to the right recurrent laryngeal nerve during surgery. The paralyzed vocal chord impaired plaintiff's voice which had been normal before surgery. The injury reduced her voice to a hoarse whisper.

She sought damages on four theories: specific negligence, res ipsa loquitur, breach of express warranty and battery or trespass. After both parties had rested, trial court sustained defendant's motion for directed verdict, holding the evidence insufficient to support jury consideration of the case on any of the pleaded theories. Plaintiff assigns this ruling as error. We must review each of the pleaded bases for recovery in the light of applicable law and the evidence.

I. *Specific negligence.* Plaintiff alleges there was sufficient evidence to support jury submission of her charge defendant negligently cut or injured the recurrent laryngeal nerve. Plaintiff had protruded discs at the level of the fifth and sixth cervical interspaces. The purpose of surgery was to remove the protruded discs and fuse the vertebrae with bone dowels from her hip. Removal of a disc ends the pinching of the nerve in the spinal column which causes the patient's pain. The bone supplants the disc.

The procedure involves an incision in the front of the neck at one side of the midline at a level slightly below the "adam's apple." Four columns run through the neck. The vertebrae and spinal chord are in the axial or bone column at the rear. In order to get to the axial column the surgeon must retract the visceral column which lies in front of it. The visceral column, like the vascular colums on each side of it, is covered with a protective fibrous sheath, called fascia. It contains the esophagus and trachea. The recurrent laryngeal nerve, which supplies sensitivity to the muscles that move the vocal chords, is located between the esophagus and trachea.

The surgeon does not enter the visceral column during the cervical fusion procedure. The same pliancy which enables the neck to be turned enables the visceral column to be retracted to one side to permit access to the axial column. The retraction is accomplished by using a gauze-padded retractor specifically designed for retraction of the visceral column during this surgery.

The record shows defendant used this procedure in the present case. Plaintiff was under general anesthetic. The anesthesia record is normal, and there is no evidence of any unusual occurrence during surgery. Defendant denied any possibility the laryngeal nerve was severed. He said it could not be severed unless the visceral fascia was entered, and it was not. He

also believed it would be impossible to sever the nerve during such surgery without also severing the esophagus or trachea or both.

Dr. Walter Eidbo, a Des Moines surgeon, testified for plaintiff. He is not a neurosurgeon but has assisted neurosurgeons including defendant in anterior approach cervical fusion surgery. Dr. Eidbo confirmed that the visceral column is not entered in such surgery. He contrasted it with thyroid surgery in which the thyroid gland is entered and there is a risk the laryngeal nerve, which runs through it, may be cut. He said it is usually possible to avoid injury to the nerve during the cervical fusion procedure. "It would not be usual" to encounter the nerve. He did not express an opinion as to the precise nature of the injury or its cause in this case. He did speculate it might be possible to stretch the nerve too far in retracting the visceral column. He also said, "If you should happen to hit it as you were pulling it or if your retractor would touch on it, it might be just enough to do it. I don't know." Dr. Eidbo also testified the injury could occur despite the exercise of all proper skill and care.

Defendant testified he did not know the cause of the injury but presumed it resulted from contusion of the nerve incident to retraction of the visceral column. He thought plaintiff's laryngeal nerve may have been peculiarly susceptible to such injury. He insisted the surgery was done just as it always was and if he were doing it again he would do it the same way. He said one study has shown the surgery will result in paralysis of a vocal chord in two or three-tenths of one percent of cases in which it is used. He also said there is no way to predict or prevent such instances.

The anterior approach procedure was developed in about 1954 and by 1960 special instruments had been devised to improve it. Defendant used it for the first time in December 1961. At the time of his surgery on plaintiff he had done 462 of the opera-

tions. No voice complications had resulted. As of the time of trial he had done 729 of the operations. One additional patient suffered a paralyzed vocal chord. With that patient the disc involvement was in the upper thoracic area and the visceral column had to be retracted more than usual.

As previously noted, the surgery on plaintiff was successful in terminating the protruded disc nerve impingement which had caused considerable pain, weakness and numbness in her back, neck, right arm and hand.

In considering the propriety of the verdict directed for defendant we give the evidence supporting plaintiff's claim the most favorable construction it will reasonably bear. Rule 344(f)(2), Rules of Civil Procedure.

■ We recognize three possible means to establish specific negligence of a physician. One is through expert testimony, the second through evidence showing the physician's lack of care is so obvious as to be within comprehension of a layman, and the third (actually an extension of the second) through evidence that the physician injured a party of the body not involved in the treatment. The first means is the rule and the others are exceptions to it. Sinkey v. Surgical Associates, 186 N.W.2d 658, 660 (Iowa 1971).

■ In this case plaintiff asserts a jury question was generated by the first and third means. We do not agree.

Plaintiff alleges the laryngeal nerve was negligently cut or injured. The record is devoid of any evidence the nerve was severed during surgery. At most the expert testimony from Dr. Eidbo and defendant would support a finding of negligence if the nerve had been cut, but there is no evidence it was. The evidence from both experts tended to show injury to the nerve would occur from retraction of the visceral column in a small percentage of cases in spite of all possible care.

■ The doctors agree the technique employed by defendant was proper. The sole basis for suggesting the expert testimony would support a finding of specific negligence is that the nerve was injured during retraction. Where an injury may occur despite due care, a finding of negligence cannot be predicated solely on the fact it did occur. Prosser on Torts, § 39 at 228 (Fourth Ed. 1971); see Hair v. Sorensen, 215 Iowa 1229, 247 N.W. 651 (1933); Siverson v. Weber, 57 Cal.2d 834, 22 Cal.Rptr. 337, 339, 372 P.2d 97, 99 (1962) ("The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probably caused by the negligence of those in charge of the operation.").

Plaintiff also maintains there is evidence of negligence from the fact this is a case of injury to a part of the body not involved in the treatment. However, that is not so. The surgical procedure did include retraction of the visceral column. It was very much in the surgical field.

We have been unable to locate any other case involving a claim based on vocal chord paralysis as a result of anterior approach cervical fusion surgery. Several such claims have been litigated after thyroidectomies. Plaintiff relies on two cases where vocal chord paralysis occurred following thyroidectomies, Patrick v. Sedwick, 391 P.2d 453 (Alaska 1964) and McPhee v. Bay City Samaritan Hospital, 10 Mich.App. 567, 159 N.W.2d 880 (1968). Neither case is apposite. In *Patrick* the nerve was severed and there was expert testimony surgical destruction of the nerve was consistent with due care only in circumstances which the jury could find absent in that case. In *McPhee* there was expert testimony the nerve could and should have been avoided in the surgery involved. The testimony in the present case is the converse of that in *Patrick* and *McPhee*. For cases finding insufficient evidence of negligence in alleged surgical injury to the laryngeal nerve during thy-

roidectomies see Watson v. Clutts, 262 N.C. 153, 136 S.E.2d 617 (1964); Dembicer v. Rosenthal, 53 Misc.2d 777, 279 N.Y.S.2d 943, aff'd 20 A.D.2d 758, 247 N.Y.S.2d 862 (1962); Roberts v. Wood, 206 F.Supp. 579 (D.C.Ala. 1962); Di Filippo v. Preston, 53 Del. 539, 173 A.2d 333 (1961); Maggi v. Mendillo, 147 Conn. 663, 165 A.2d 603 (1960); annot. 37 A.L.R.3d 464, 504 et seq.

Trial court did not err in directing a verdict for defendant on the issue of specific negligence in this case.

II. *Res ipsa loquitur.* Plaintiff also alleges the applicability of the doctrine of res ipsa loquitur. Our most recent statement of the doctrine appears in Fischer, Inc. v. Standard Brands, Inc., 204 N.W.2d 579, 583 (Iowa 1973):

"Under the doctrine of res ipsa loquitur, where (1) injury or damage is caused by an instrumentality under the exclusive control of defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits, but does not compel, an inference defendant was negligent."

The contest in this case concerns presence of the second foundation fact.

Plaintiff points to evidence which supports two inferences, one (not disputed) that her laryngeal nerve was injured during the surgery, and the other that such injury is extremely rare in such surgery. This evidence is primarily in the expert testimony of Dr. Eidbo and defendant. Defendant argues the second foundation fact for res ipsa loquitur is absent because it does not lie in the common knowledge of laymen to say injury to the laryngeal nerve does not occur if due care is exercised in anterior approach cervical fusion surgery.

■ We must initially decide what has previously been an open question in this jurisdiction: may the common experience to establish the second foundation fact for res ipsa loquitur be shown by expert testi-

mony? See Loth, Res Ipsa Loquitur in Iowa, 18 Drake L.Rev. 1, 18 (1968).

In asserting such common experience must be a matter of common knowledge in the lay community, defendant cites Fehrman v. Smirl, 20 Wis.2d 1, 121 N.W.2d 255, 122 N.W.2d 439 (1963). However, that case does not support defendant's position. The Wisconsin court held the foundation for res ipsa loquitur may rest either in the common knowledge of laymen or in expert testimony. In the facts of that case the court held there was insufficient basis in common knowledge but there was sufficient basis in expert testimony. *Id.,* 121 N.W.2d at 268. For additional malpractice cases in which expert testimony has been sufficient to lay a foundation for res ipsa loquitur see Tomei v. Henning, 67 Cal.2d 319, 62 Cal.Rptr. 9, 431 P.2d 633 (1967); Mayor v. Dowsett, 240 Or. 196, 400 P.2d 234 (1965); Horner v. Northern Pacific Beneficial Ass'n, Hospitals, Inc., 62 Wash. 2d 351, 382 P.2d 518 (1963). See also Prosser on Torts, § 39 at 217 (Fourth Ed. 1971) ("Even where * * * a basis of common knowledge is lacking, * * * expert testimony may provide a sufficient foundation * * *."); 2 Harper and James, The Law of Torts, § 19.6 at 1083 (1956) ("Expert evidence along this line is clearly admissible * * *."). We see no reason to say the common experience required to establish the second foundation fact for res ipsa loquitur may not include the common experience of experts.

We endorse the following statement found in comment d., Restatement, Second, Torts, § 328D at 158–159:

"In the usual case the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows. It may, however, be supplied by the evidence of the parties; and expert testimony that such an event usually does not

occur without negligence may afford a sufficient basis for the inference."

Thus we disagree with defendant's contention the second foundation fact must be based exclusively on the common knowledge of laymen.

■ In this case however, even considering the expert testimony, the record at best only supports an inference plaintiff suffered an extremely rare injury in anterior approach cervical fusion surgery which may occur even when due care is exercised. Rarity of the occurrence is not a sufficient predicate for application of res ipsa loquitur. "Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in the light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible." Siverson v. Weber, 57 Cal.2d 834, 22 Cal. Rptr. 337, 339–340, 372 P.2d 97, 99–100 (1962); see also 1 Louisell and Williams, Medical Malpractice, § 14.04 at 426–427 (1970). There is no basis in the present case, in expert testimony or otherwise, for saying plaintiff's injury is more likely the result of negligence than some cause for which the defendant is not responsible.

■ Plaintiff relies on Mayers v. Litow, 154 Cal.App.2d 413, 316 P.2d 351 (1957) where a paralyzed vocal chord resulted from a thyroidectomy. In that case, unlike this one, there was expert testimony the recurrent laryngeal nerve had been severed during surgery and that it should not have been. The doctrine of res ipsa loquitur was held applicable. In the present case there is no evidence the nerve was severed, and the expert testimony agrees the nerve damage which may occur in retraction of the visceral column is an inherent risk in anterior approach cervical fusion surgery even when due care is used.

We do not believe there was any basis in this case for submission of res ipsa loqui-

tur. Trial court did not err in refusing to submit it.

III. *Express warranty.* Plaintiff alleges there was a jury issue on her theory defendant expressly warranted she would be able to live a normal life after the surgery. She asserts the impairment of her voice breached such warranty.

■ We have long held a physician does not by undertaking treatment impliedly warrant a cure or guarantee the best possible result. See Whetstine v. Moravec, 228 Iowa 352, 369, 291 N.W. 425, 433 (1940), and citations. As a neurosurgeon, defendant impliedly warranted he possessed and would apply that degree of skill, care and learning ordinarily possessed and exercised by other neurosurgeons in similar circumstances. See McGulpin v. Bessmer, 241 Iowa 1119, 1132, 43 N.W.2d 121, 128 (1950); 61 Am.Jur.2d Physicians, Surgeons and Other Healers, § 119.

■ Nevertheless, it is generally held that a physician may bind himself in a given situation to perform a cure or obtain specific results by treatment or an operation. 61 Am.Jur.2d, Physicians, Surgeons and Other Healers, § 149 at 279; 1 Louisell and Williams, Medical Malpractice, § 8.10 (1970); annot. 43 A.L.R.3d 1221; Prosser on Torts, § 32 at 162 (Fourth Ed. 1971).

In this case the record shows defendant first saw plaintiff April 3, 1968, at which time she described her symptoms and he administered a neurological examination. When defendant advised plaintiff she might have a protruded disc and she could be hospitalized for further examination if she believed her symptoms were sufficiently severe, she elected to be hospitalized. Myelographic examination disclosed protruded discs at the fifth and sixth cervical interspaces. She was told of the findings and defendant recommended conservative treatment including traction. He advised plaintiff she should not consider surgery unless the pain became greater than she could tolerate.

When seen by defendant in October 1968 plaintiff was continuing to have severe pain and wanted to discuss surgery. Defendant testified he described the surgical procedure to her and answered her questions about it. Plaintiff said defendant's assistant described the procedure to her the day before surgery. She acknowledges defendant told her it was major surgery and involved risks. She testified he also stated the surgery was comparatively simple for a neurosurgeon and his patients had experienced satisfactory results from it. On direct examination she said he told her if she turned out like his other patients she could expect to lead a more active and normal life. On cross-examination she stated, "I did not mean to say specifically 'if I turned out.' I meant I guess in my own mind if I turned out that good that that would be great." She then testified as follows:

Q. "You don't mean or claim he made any promises to you that you would be cured do you or entered into any contract with you that you would be cured do you? A. No. No contract except other than saying as far as he didn't leave any doubt in my mind that I wouldn't be able to live a real normal life.

Q. "All right. And when you had reference to a normal life you meant with reference to the problems you were then having with your arm and hand and neck did you not? A. Yes. Well I presume. * * * I didn't think about other complications."

■ We recognize that what a physician may view as therapeutic reassurance may in some cases be taken by his patient as something more. There comes a point when a question of fact may be generated as to whether the doctor has warranted a cure or a specific result. See, e. g., Guilmet v. Campbell, 385 Mich. 57, 188 N.W.2d 601 (1971). However, in the present case the evidence does not rise to that level. We do not believe the evidence would sup-

port a jury finding that defendant promised or warranted the surgery would be either successful or free from complications. Plaintiff candidly admits defendant's assurances were qualified and expressed only in terms of experience of most other patients. What he said was factual and was neither given nor received as a risk-free guarantee. The surgery was of course successful except for the unfortunate collateral result.

Trial court was right in refusing to submit the issue of express warranty to the jury.

IV. *Battery or trespass.* Plaintiff contends there was also sufficient evidence to submit the case to the jury on the theory of battery or trespass. In effect she alleges she consented to fusion of two vertebrae (removal of only one protruded disc) thinking there would be a separate operation if additional vertebrae had to be fused. She asserts the fact four vertebrae were fused combined with defendant's assurances and failure to warn her of specific hazards vitiated her consent and makes the paralyzed vocal chord the result of battery or trespass for which defendant is liable even without negligence. There was no evidence or contention by her in the trial court nor is there any assertion here that she would not have consented to the surgery had she known those things she says were withheld from her prior to surgery.

Defendant testified plaintiff was fully advised as to the nature of her problem and the scope of corrective surgery. He acknowledges he did not advise her of the hazard of vocal chord paralysis. He believed the possibility of such occurrence was negligible and outweighed by the danger of undue apprehension if warning of the risk was given.

We discussed the concept of informed consent in Grosjean v. Spencer, 258 Iowa 685, 140 N.W.2d 139 (1966). That case involved a claim of negligence based on alleged inadequate disclosure of information

by a physician to the wife of his patient. It did not involve a claim of battery or trespass. The contention here is based on battery or trespass rather than negligence.

■ The distinction between these theories is explained in Cobbs v. Grant, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972). · We approve and adopt the following discussion from that case:

"Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery. (Berkey v. Anderson (1969) supra, 1 Cal.App.3d 790, 82 Cal. Rptr. 67 (allegation of consent to permit doctor to perform a procedure no more complicated than the electromyograms plaintiff had previously undergone, when the actual procedure was a myelogram involving a spinal puncture); Bang v. Charles T. Miller Hosp. (1958) 251 Minn. 427, 88 N.W.2d 186 (plaintiff consented to a prostate resection when uninformed that this procedure involved tying off his sperm ducts); Corn v. French (1955) 71 Nev. 280, 289 P.2d 173 (patient consented to exploratory surgery; doctor performed a mastectomy); Zoterell v. Repp (1915) 187 Mich. 319, 153 N.W. 692 (consent given for a hernia operation during which doctor also removed both ovaries).

"However, when an undisclosed potential complication results, the occurrence of which was not an integral part of the treatment procedure but merely a known risk, the courts are divided on the issue of whether this should be deemed to be a battery or negligence. (Gray v. Grunnagle (1966) 423 Pa. 144, 223 A.2d 663 (failure to warn a patient a spinal operation involved an inherent risk of permanent paralysis; battery); Belcher v. Carter (1967) 13 Ohio App.2d 113, 234 N.E.2d 311 (failure to warn of danger of radiation burns; battery); Nolan v. Kechijian (1949) 75 R.I. 165, 64 A.2d 866 (operation to strengthen ligaments of spleen when spleen was removed; trespass to the body and negligence); Natanson v. Kline (1960) 186 Kan. 393, 350 P.2d 1093 (radiation treatment produced a severe burn; *semble* battery or negligence); Natanson v. Kline (1960) 187 Kan. 186, 354 P.2d 670 (rehearing of previous case; negligence); Mitchell v. Robinson (Mo. 1960) 334 S.W.2d 11 (vertebrae broken during insulin shock treatment; negligence).) California authorities have favored a negligence theory. (Carmichael v. Reitz (1971) 17 Cal. App.3d 958, 95 Cal.Rptr. 381 (pulmonary embolism caused by adverse reaction to drug; negligence); Dunlap v. Marine (1966) 242 Cal.App.2d 162, 51 Cal.Rptr. 158 (cardiac arrest allegedly caused by administration of anesthetic; negligence); Tangora v. Matanky (1964) 231 Cal.App.2d 468, 42 Cal.Rptr. 348 (anaphylactic shock as a result of intramuscular penicillin shot; negligence); Salgo v. Leland Stanford, etc., Bd. of Trustees (1957) 154 Cal.App.2d 560, 317 P.2d 170 (paralysis of lower extremities after aortographic examination; negligence).)

"Dean Prosser surveyed the decisions in this area and concluded, 'The earliest cases treated this as a matter of vitiating the consent, so that there was liability for battery. Beginning with a decision in Kansas in 1960 [Natanson v. Kline (1960) supra, 187 Kan. 186 [354 P.2d 670]], it began to be recognized that this was really a matter of the standard of professional conduct . . . . [T]he prevailing view now is that the action . . . . is in reality one for negligence in failing to conform to the proper standard . . . .' (Fns. omitted; Prosser on Torts (4th Ed. 1971) pp. 165–166.)

"Although this is a close question, either prong of which is supportable by authority, the trend appears to be towards categorizing failure to obtain informed consent as negligence. That this result now appears with growing fre-

quency is of more than academic interest; it reflects an appreciation of the several significant consequences of favoring negligence over a battery theory. * * * [M]ost jurisdictions have permitted a doctor in an informed consent action to interpose a defense that the disclosure he omitted to make was not required within his medical community. However, expert opinion as to community standard is not required in a battery count, in which the patient must merely prove failure to give informed consent and a mere touching absent consent. Moreover a doctor could be held liable for punitive damages under a battery count * * *. (Comment, Informed Consent in Medical Malpractice (1967) 55 Cal.L.Rev. 1396.) Additionally, in some jurisdictions the patient has a longer statute of limitations if he sues in negligence.

"We agree with the majority trend. The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in neglience." *Id.* 104 Cal. Rptr. at 511, 502 P.2d at 7–8.

■ From our approval of this analysis it should be clear we believe the battery or trespass theory pleaded by plaintiff in this case is limited in its applicability to surgery to which the patient has not consented. There must be a substantial difference between the surgery consented to and the surgery which is done. Plaintiff asserts she consented to only one fusion rather than two. Assuming this is true, the most that could be argued is the second fusion was a battery or trespass. But she does not claim damages for a second fusion. She asks damages because of injury to the laryngeal nerve during surgery. The evidence is undisputed that whether one or two fusions were to be done the path to the axial column had to be cleared by retraction of the visceral column. Hence, any injury caused by such retraction occurred during a procedure to which consent had been given. Retraction of the visceral column during the surgery was not a battery or trespass.

■ We have no occasion to reach the question whether failure to advise plaintiff of the risk of laryngeal nerve injury would in the circumstances of this case have generated a jury issue on negligence, but we do point out that recovery on such basis is precluded unless a plaintiff also establishes he would not have submitted to the procedure if he had been advised of the risk. See Canterbury v. Spence, 150 U.S.App.D. C. 263, 464 F.2d 772, 790 (1972); Cobbs v. Grant, supra, 502 P.2d at 11; Shetter v. Rochelle, 2 Ariz.App. 358, 409 P.2d 74 (1965), modified, 2 Ariz.App. 607, 411 P.2d 45 (1966); Aiken v. Clary, 396 S.W.2d 668, 676 (Mo. 1965); Plante, An Analysis of "Informed Consent," 36 Fordham L. Rev. 639, 666–669. There is no evidence plaintiff would have withheld her consent in this case.

Trial court did not err in refusing to submit the case on plaintiff's theory of battery or trespass.

Since there was insufficient evidence to support submission of the case on any of the four pleaded theories, trial court correctly sustained defendant's motion for directed verdict. The case is affirmed.

Affirmed.