MOORE v FOSTER

Docket No. 78-5168. Submitted December 5, 1979, at Grand Rapids.—
Decided March 18, 1980. Leave to appeal applied for.

Viola Moore, individually and as administratix of the estate of
Ernest R. Cooper, deceased, brought a medical malpractice
action against Bradford S. Foster, M.D., in Emmet Circuit
Court. Martin B. Breighner, J., entered a judgment in favor of
defendant in accordance with a jury verdict of no cause of
action. The plaintiff appeals, alleging 1) that the trial court's
instructions to the jury erroneously limited the issues to
whether peritonitis was present in the decedent's body at the
time he was first examined by the defendant, whereas the
plaintiff's theory of malpractice depended on the defendant's
failure to recognize and properly act upon a hard or surgical
abdomen, rather than upon the existence of any specific dis-
ease, and 2) the trial court erred in allowing defendant's
expert, a pediatrician, who stated that he was unfamiliar with
the standard of care of a general practitioner, to testify as to
the higher standard of care of a specialist. *Held:*

1) The trial court erred in stating that the plaintiff's recovery
was predicated on a finding that the decedent was suffering
from peritonitis at the time that the defendant examined him.
However, when the trial court's instructions are read as a
whole, a more correct formulation of the issues was given.
Thus, any error in the formulation of the issues was harmless,
especially since it was immediately followed by a reading of the
parties' theories of the case.

2) There is nothing to preclude a defendant doctor from

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 894.
    Propriety and effect of instructions in civil case on the weight of
    reliability of medical expert testimony. 86 ALR2d 1038.
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 106,
    198, 202, 203.
    Necessity of expert evidence to support an action for malpractice
    against a physician or surgeon. 81 ALR2d 597.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 199 *et
    seq.*
[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 213,
    214.

bringing a specialist to testify on his behalf that the defendant's standard of conduct was proper even under the higher standard of care of a specialist.

Affirmed.

BRONSON, P.J., dissented. We would hold that the trial court's formulation of the issues unfairly limited the scope of the plaintiff's case and he would reverse and remand for a new trial.

OPINION OF THE COURT

1. JURY — INSTRUCTIONS TO JURY — APPEAL.
   Jury instructions must be reviewed as a whole and not by selected excerpts; if, on balance, the theories of the parties and the applicable law are adequately and fairly represented to the jury, the instructions are not erroneous.

2. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS AND SURGEONS — EVIDENCE — STANDARD OF CARE.
   A plaintiff, in a medical malpractice action, must produce medical testimony to the effect that what an attending physician did was contrary to the practice in that community or similar communities, or that the physician omitted doing something which was ordinarily done in that community or similar communities; the plaintiff must also show by medical evidence that the physical condition for which he claims damages was caused by the alleged negligence of the defendant; in other words, a physician is responsible in damages for unfortunate results when it is shown that he has departed from that standard of care which is known as customary medical practice.

3. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS AND SURGEONS — WITNESSES — SPECIALISTS — GENERAL PRACTITIONERS — STANDARD OF CARE.
   A plaintiff in a medical malpractice action may not have a specialist testify on a defendant's breach of the standard of care of a general practitioner unless the specialist is familiar with that standard of care; however, this rule does not preclude a defendant doctor from calling a specialist to testify on the defendant's behalf that the conduct in question was proper even under the higher standard of care for a specialist.

DISSENT BY BRONSON, P.J.

4. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS AND SURGEONS — INSTRUCTIONS TO JURY — EXISTENCE OF SPECIFIC DISEASE.
   *Instructions to the jury in a medical malpractice action which*

*gave the impression that the liability of the defendant physician was predicated on the existence of, and failure .to diagnose, a specific condition may not be viewed as harmless error where such a formulation of the issue unfairly limited the scope of the plaintiff's case which was not predicated upon the existence of any specific condition.*

*Sumpter, Harrington & Loznak, P.C.,* for plaintiff.

*Carpenter, Fenner, Barney & Hofmann,* for defendant.

Before: BRONSON, P.J., and ALLEN and R. M. MAHER, JJ.

PER CURIAM. The plaintiff instituted a medical malpractice action against the doctor who treated her 4-year old son, Ernest R. Cooper, now deceased. She appeals as of right from a jury verdict of no cause of action in favor of the defendant.

At about 7 p.m. on February 3, 1975, the plaintiff brought her son to the emergency room of the McDonald-Lockwood Hospital in Petoskey, Michigan, where he was treated by the defendant. The child's symptoms included a runny nose, coughing, vomiting, fever, and a distended stomach. Dr. Foster examined the boy, took his temperature, and felt his stomach. When defendant was palpating the abdomen, he did not elicit a pain response and instead caused the child to laugh. Dr. Foster diagnosed the illness as tonsilitis, gave the boy a penicillin shot, and sent him home. Ernest Cooper died 30 hours later.

Dr. Mikhail, the pathologist who performed the autopsy, stated that the cause of death was acute generalized peritonitis due to perforation of the jejunum, or small intestine. The pathologist surmised that the perforation could have been caused

by a small bone fragment which punctured the
bowel wall. In direct examination Dr. Mikhail
estimated the onset of peritonitis in the decedent
as roughly 36 to 48 hours prior to his death.
During cross-examination, he admitted that this
was at best a rough estimate and that onset could
have occurred a mere 12 hours prior to death, due
to a variety of factors and differences in physical
makeup between individuals. Dr. Mikhail was un-
able to determine whether the decedent had tonsil-
itis, since removal of tonsils after death necessi-
tates surgery and disfigures the head. All of the
medical experts who testified for both parties
stated that a person suffering from peritonitis
would normally exhibit symptoms of abdominal
pain and tenderness. They agreed that a rigid or
board-like abdomen is characteristic of peritonitis.

In her complaint, the plaintiff alleged, *inter alia,*
that the defendant was negligent in failing to take
a proper medical history, in failing to recognize
that decedent had an acute or surgical abdomen,
in failing to perform blood tests or other labora-
tory studies or x-rays, and in failing to admit the
decedent to the hospital.

The most significant issue raised on appeal in-
volves the trial judge's jury instructions wherein
he *sua sponte* framed the ultimate issues in the
case as follows:

"The first issue is as follows: Was peritonitis present
in the body of Ernest R. Cooper when Dr. Foster saw
him on February 3, 1975. I conceive this to be an issue
in the case.

"Second: If so, was Dr. Foster negligent in not diag-
nosing this condition on that date, or was he negligent
in not requiring further testing and investigation of
Cooper's condition.

"And three: If you find Dr. Foster was negligent, you

must determine if his negligence, failure to recognize peritonitis, or failure to seek appropriate testing and/or investigation and consultation with other physicians, was a proximate cause of Ernest R. Cooper's death."

Immediately afterward, the trial judge read the parties' theory of the case.

The plaintiff alleges that the aforesaid instructions erroneously limited the issues to whether peritonitis was present in the decedent's body at the time he was first examined by the defendant, whereas her theory of malpractice depended on defendant's failure to recognize and properly act upon a hard or surgical abdomen, rather than upon the existence of any specific disease.

We note that the instructions of a trial judge must be reviewed as a whole and not by selected excerpts. *Froling v Bischoff,* 73 Mich App 496, 503; 252 NW2d 832 (1977). If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, there is no reversible error. *Berlin v Snyder,* 89 Mich App 38, 41; 279 NW2d 322 (1979).

In a medical malpractice case, the plaintiff must produce medical testimony to the effect that what the attending physician did was contrary to the practice in that or similar communities, or that he omitted doing something which was ordinarily done in that or similar communities. *Daniel v McNamara,* 10 Mich App 299, 306; 159 NW2d 339 (1968), *Skeffington v Bradley,* 366 Mich 552, 555; 115 NW2d 303 (1962). The plaintiff must also show by medical evidence that the physical condition for which he claims damages was caused by the alleged negligence of the defendant. *Miles v Van Gelder,* 1 Mich App 522, 536; 137 NW2d 292 (1965). In other words, a physician is responsible in damages for unfortunate results when it is shown

that he has departed from that standard of care which is known as customary medical practice. *McPhee v Bay City Samaritan Hospital,* 10 Mich App 567, 570; 159 NW2d 880 (1968).

We would conclude that the trial judge erred in stating that plaintiff's recovery was predicated on a finding that the decedent was suffering from peritonitis at the time that defendant examined him. A more correct formulation of the issue would have required the jury to find malpractice if, upon the symptoms exhibited by the decedent at the time that defendant examined him, customary medical practice would have required further laboratory tests, x-rays, or immediate admission to the hospital. However, this is the import of the trial court's issues 1, 2 and 3 when read together. Thus, we would hold that any error in the formulation of the issues was harmless, especially since it was immediately followed by reading the parties' theories of the case. Based upon the evidence, reaffirmed by the plaintiff herself, that the child did not complain of any abdominal pain and laughed when the defendant examined his abdomen, we cannot say that the erroneous formulation of the issues would have affected the jury's verdict.

The plaintiff also alleges that the trial court erred in allowing defendant's expert witness, a pediatrician, who stated that he was unfamiliar with the standard of care of a general practitioner, to testify as to the higher standard of care of a specialist. However, we find that the plaintiff misconstrues the purpose of the rule concerning the standard of care.

MCL 600.2912a; MSA 27A.2912(1):

"Sec. 2912a. In an action alleging malpractice the

plaintiff shall have the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

"(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

"(b) The defendant, if a specialist, failed to provide the recognized standard of care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury."

Under the statute, the plaintiff could not have brought a specialist to testify on the defendant's breach of the standard of care of a general practitioner unless he was familiar with that standard of care. See *Siirila v Barrios,* 398 Mich 576, 593; 248 NW2d 171 (1976). That rule is designed to protect the defendant from being compared with the higher standard of care required from one who holds himself out as an expert in the field. However, we see nothing in this rule to preclude a defendant doctor from bringing a specialist to testify on his behalf that the conduct in question was proper even under the higher standard of care.

We have examined the remainder of the plaintiff's allegations and find them to be free of reversible error.

Affirmed.

BRONSON, P. J. *(dissenting).* I agree with the majority that the trial court's *sua sponte* statement of the issues was erroneous in that it predi-

cated liability on a finding that decedent was suffering from peritonitis at the time of defendant's examination. I must respectfully dissent, however, from the majority's conclusion that such a framing of the issues was harmless error.

I cannot reach the conclusion that, taken together, the three issues as formulated by the trial court correctly stated the case. Each of the three issues directly or indirectly referred to peritonitis. Taken together, the impression still remains that liability is predicated on the existence of, and failure to diagnose, peritonitis. Formulating the issues in this manner unfairly limited the scope of plaintiff's case, and, coming as it did from the bench, the trial court's statements undoubtedly had a great impact on the jury and should not be considered harmless.

I would reverse and remand for a new trial.