**Robert L. PETTY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C 78–4083.**

United States District Court, N.D. Iowa, W.D.

March 31, 1983.

Wiley Mayne, Sioux City, Iowa, for plaintiff.

Asher E. Schroeder, Asst. U.S. Atty., Sioux City, Iowa, for defendant.

## ORDER

DONALD E. O'BRIEN, District Judge.

This matter comes before the Court pursuant to a remand from the Eighth Circuit Court of Appeals, 679 F.2d 719 (1982). This Court was directed to set forth its opinion of Iowa law as it relates to the plaintiff's claims under the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.*, and the National Swine Flu Immunization Act of 1976, 42 U.S.C. 247b(j)–(*l* ). The Court has received supplemental proposed findings of fact and conclusions of law from the parties.[1] The Court believes that the principles of law set forth herein are in accordance with Iowa law and represent the position that would be taken by the Iowa Supreme Court if confronted with these issues. Based upon this Court's opinion of Iowa law, it reinstates the judgment in favor of the plaintiff in the amount of $212,807.22 with interest and costs.

*Plaintiff's Claims under Iowa Negligence Law*

Under Iowa law, the Secretary of Health, Education and Welfare, in conjunction with the Center for Disease Control and the Bureau of Biologics, had a duty to warn prospective recipients of the swine flu vaccination of all reasonably foreseeable dangers.

> A duty to warn depends on superior knowledge and is said to exist when one may reasonably foresee danger of injury or damage to one less knowledgeable unless adequate warning of danger is given. It is this reasonable foreseeability which triggers the obligation to warn, which must be determined by the circumstances of each case.

*Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910, 913 (Iowa 1973). This duty also extends to Merrill-National, the manufacturer of the swine flu vaccine, who was a "program participant" as that term is used in 42 U.S.C. 247b(k)(2)(B).

---

**1.** Both parties agreed that no additional evidence was necessary for the disposition of this matter.

■ The facts of this case clearly show that the dangers of serum sickness and abortive neuropathy from flu vaccines were well known in the medical community for a number of years prior to 1976. Testimony to this effect came from Dr. Clark Hyden, Dr. Joseph Bellanti, Dr. Charles Poser, and Dr. Hattwick. Dr. Poser testified that these risks had been known for at least forty years prior to 1976.[2] He also stated that the risks were well documented in medical literature and text books. Dr. Hattwick, as director of the National Influenza Immunization Program during 1976, stated that neurological reactions to flu vaccines were to be expected. Based on the testimony of these doctors, the Court concludes that the risks of serum sickness and abortive neuropathy were reasonably foreseeable in 1976. The defendant therefore had a duty to warn prospective recipients of these dangers.

■ Despite the reasonably foreseeable nature of these risks, recipients of the swine flu vaccine were not adequately warned.[3] The information form provided to recipients specified only minor complications that might result from its use. Although the form did state that there was a possibility of severe or potentially fatal reactions, very few specifics were provided.

This brings the Court to the issue of whether the forms given to the plaintiff complied with the Iowa informed consent law, Code of Iowa Sec. 147.137. The Court seriously questions whether this statute applies in the context of mass immunizations. Assuming, for the sake of argument, that the statute does apply, it was not complied with in this case. In order to create the presumption that informed consent was given pursuant to this statute, the form must set forth in general terms the nature and purpose of the procedure, together with the known risks, if any, of death, brain damage, quadraplegia, paraplegia, the loss or loss of function of any organ or limb, ... with the probability of each such risk if reasonably determinable, Code of Iowa Sec. 147.137(1). The consent form given to the plaintiff failed to set forth the known risk of loss of function of any organ or limb. This symptom of serum sickness is one major element of plaintiff's damages. Thus, the Iowa informed consent law could not relieve the defendant of its liability for failure to warn of known dangers.

■■ This Court concludes that the defendant's failure to adequately warn the plaintiff of known risks associated with the swine flu vaccine is the proximate cause of the damages suffered by the plaintiff. Concern has been raised regarding the case of *Perin v. Hayne*, 210 N.W.2d 609 (Iowa 1973), a medical malpractice case wherein the Court stated that a plaintiff's recovery in an informed consent case is precluded unless he also establishes that he would not have submitted to the procedure had he been properly advised of the risk.

This Court concludes that the factual setting in *Perin* is distinguishable and that the Iowa Supreme Court would not follow it if presented the factual setting before this Court. Since we are concerned with the recipient's decision-making process, it is important to examine the conditions under which the decision is made. In *Perin*, the decision was made in the context of a physician-patient relationship. The issue in *Perin* related to the complications arising from a surgical procedure. There is no suggestion in *Perin* that the plaintiff was in any way coerced into receiving the surgery.

The matter now before the Court is more closely analogous to a negligence-based products liability case. This was a nationwide immunization program that, in Mr. Petty's case, was conducted without the benefit of the physician-patient relationship. However, the most notable distinc-

---

2. Tr. 182, 190.

3. It must be remembered that there is no evidence in the record that plaintiff ever received the document described as MDL Exhibit 564.

The Court's opinion of this situation is fully set forth in its June 8, 1981 Order at pp. 1–3. The Court finds no reason to change that opinion.

tion between this case and the *Perin* case is that the "hardsell" approach to immunization taken here had the natural effect of firmly planting within the recipient's mind the imperative need for receiving the shot. The approach taken by those charged with the administration of this program had the distinct effect of de-emphasizing the importance of making individual determinations as to the advisability of undergoing the risks of immunization.

This Court concludes that the Supreme Court of Iowa, if faced with this problem, would adopt the approach of *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.1974), wherein the Court presumed that an adequate warning would have been read and that the recipient of the vaccine would have acted on the warning:[4]

> Where a consumer, whose injury the manufacturer should have reasonably foreseen, is injured by a product sold without a required warning, a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks. In the absence of evidence rebutting the presumption, a jury finding that the defendant's product was the producing cause of the plaintiff's injury would be sufficient to hold him liable.

*Reyes* at p. 1281. This presumption is from Section 402A of the Restatement (Second) of Torts. The presumption is consistent with Iowa law which adopted Section 402A of the Restatement in *Hawkeye Security Insurance v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970). Although this presumption comes from a strict liability theory, it is nevertheless applicable to the proximate cause element of a negligence case, *DeLuryea v. Withrop Laboratories*, 697 F.2d 222 at 224 (8th Cir.1983).[5]

Similarly, the Court does not believe that this presumption has been overcome in this case. Mr. Petty testified that adequate

warnings would have helped him in that they would have enabled him to make a more informed judgment. This testimony provides the basis for this Court's opinion that Mr. Petty was in fact concerned about making an informed decision. For these reasons, the Court concludes that plaintiff has shown that the failure of the defendant to properly warn was the proximate cause of plaintiff's injuries.

In summary, the Court finds that the defendant, through its agents and program participant, had a duty to warn of the risks of injuries that plaintiff encountered. This duty was clearly breached. There is no issue as to the cause-in-fact of plaintiff's injuries and the Court hereby finds that the defendant's negligence was the proximate cause of plaintiff's substantial damages. The Court concludes that defendant is liable under the Iowa law of negligence.

*Plaintiff's Claims under Iowa Strict Products Liability Law*

■ The Supreme Court of Iowa adopted Section 402A of the Restatement (Second) of Torts as its formulation of strict products liability law in the case of *Hawkeye Security Insurance v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970). The essential elements to establish a cause of action under the strict liability theory are (1) manufacture of a product by a defendant; (2) the product was in a defective condition; (3) the defective condition was unreasonably dangerous to the user or consumer when used in a reasonably foreseeable use; (4) the manufacturer was engaged in the business of manufacturing such a product; (5) said product was expected to and did reach the user or consumer without substantial change in condition, i.e., the defect existed at the time of the sale; (6) said defect was the proximate cause of personal injuries or property damage suffered by the user or consumer, and (7) damages suffered by the user or consumer. *Osborn v. Massey-Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa

---

**4.** *See also Sterling Drug v. Cornish*, 370 F.2d 82 (8th Cir.1966).

**5.** *DeLuryea* was decided under Arkansas law. However, the proposition cited is equally applicable under Iowa law.

1980). The disputed issues in this case are whether the product was in a defective condition, whether the defect rendered the product unreasonably dangerous and whether the defect was the proximate cause of personal injuries to Mr. Petty.

■ Under Section 402A of the Restatement (Second) of Torts, a product may be unreasonably dangerous if the seller fails to give adequate directions or warning as to its use, *see* Comment j to Section 402A, Restatement (Second) of Torts. This was the holding of *Cooley v. Quick Supply Co.*, 221 N.W.2d 763 (Iowa 1974), wherein the Court stated:

> A manufacturer's duty to produce a safe product, with appropriate warnings and instructions where necessary, rests initially on the responsibility each of us bears to exercise care to avoid unreasonable risks of harm to others ... Activity involving a small likelihood of death or serious injury may require greater and more costly precautions than that involving a higher probability of lesser harm ... Where an act involves: A risk of death or serious bodily harm, and particularly if it is capable of causing such results to a number of persons, the highest attention and caution are required even if the act has a very considerable utility. *Thus, those who deal with firearms, explosives, poisonous drugs, or high tension electricity are required to exercise the closest attention and the most careful precautions, not only in preparing for their use but in using them.* (Emphasis added.)

*Cooley* at p. 769. Similarly, in the case of *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968), the Court held, in the context of a dangerous polio vaccine, that whether warnings need be given does not depend on a purely statistical representation of the risks involved.

> When, in a particular case, the risk qualitatively (e.g., of death or major disability) as well as quantitatively, on balance with the end sought to be achieved, is such as to call for a true choice judgment, medi-

cal or personal, the warning must be given.
*Davis* at pp. 129–30.

■ This Court is not aware of any Iowa decisions involving the use of dangerous drugs or vaccine. The Court believes that, if the situation were presented, the Iowa Supreme Court would adopt the rule set forth in Comment k to Section 402A of the Restatement (Second) of Torts which states:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, *and accompanied by proper directions and warning*, is not defective, nor is unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. (Emphasis added.)

Under Comment k, it is obvious that the warnings given by the manufacturer are of paramount importance. This is because the average consumer of a product such as a vaccine has no other way of determining the risks associated with its use.

■ The Court has already found that, under Iowa law, the defendant was negligent in failing to give proper warnings of the risk of serum sickness and neurological complications. The Court now finds that the lack of warnings rendered the swine flu vaccine defective and further, that the defect rendered the swine flu vaccine unreasonably dangerous under the circumstances in which it was administered here. This Court shares the opinion set forth in *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir. 1980), wherein it states that the standard for liability under strict liability and negligence is essentially the same in a case where the manufacturer has failed to adequately warn prospective users of an unavoidably dangerous vaccine. *See also DeLuryea v. Winthrop Laboratories, supra.*

For these reasons, the Court finds that Merrill National, the manufacturer of the swine flu vaccine, would have been liable under the Iowa strict products liability law. Since Merrill National was a "program participant" as that term is used in the Swine Flu Act, the Court finds that the United States "stands in its shoes" and therefore is liable to the plaintiff on this theory as well.

The plaintiff has not proposed additional findings of fact and conclusions of law under the warranty, misrepresentation and malpractice of vaccine administrator's theories.[6] With respect to defective products causing personal injury, the strict liability of Section 402A has decreased the usefulness of the warranty theory significantly. The only advantage of a warranty theory over strict liability arises when the plaintiff seeks damages for commercial loss. There is, of course, no claim here for commercial loss. As to the other theories, the Court expresses no opinion.

The Court hereby incorporates by reference its prior opinions of December 31, 1980, 536 F.Supp. 860 (D.Iowa), and June 8, 1981. The Court, having reconsidered this matter in light of the Eighth Circuit Court of Appeals' opinion, reinstates the judgment in favor of plaintiff.

Upon the foregoing,

IT IS THEREFORE ORDERED that the Clerk of Court for the Northern District of Iowa shall enter judgment in favor of the plaintiff and against the United States in the sum of $212,807.22, together with costs and interest as provided by law.

---

6. Plaintiff proposed no factual or legal findings that would support a finding of liability based on the actions of the local officials who administered the vaccine. The Court will not make such finding, sua sponte.