**METROPOLITAN GREETINGS, INC.**
**t/a the Lillian Ruth Studios**

v.

**MICHAEL McDONOUGH, INC.**
**Civ. A. No. 70-2089.**

United States District Court,
E. D. Pennsylvania.

Feb. 2, 1973.

---

Joseph Glider, Philadelphia, Pa., for plaintiff.

Edward M. Snyder, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

EDWARD R. BECKER, District Judge.

For the reasons stated below, this memorandum opinion has been written and certified so as to supplement the record in this case, which is presently pending before the Court of Appeals. The case is a damage action for goods sold and delivered.[1] Following trial without a jury, judgment was entered in favor of the plaintiff in the full amount of its claim, together with interest, and judgment was also entered in favor of plaintiff in connection with defendant's counterclaim. Actually, the counterclaim was the sole issue before the Court at trial,[2] for defendant had conceded delivery and non-payment, and its sole defense, that of alleged defects in the merchandise, had been excluded by the Court by virtue of a pretrial sanctions order which we entered because of the failure of defendant to comply with the Court's order with respect to discovery.

It appears from a recent communication from defendant's counsel that the action of this Court in connection with plaintiff's motion for sanctions is a principal ground of defendant's appeal. It further appears that, although hearing

---

1. Jurisdiction is founded upon diversity of citizenship. Plaintiff is a Massachusetts corporation and defendant is a Pennsylvania corporation. The complaint claims a balance due of $17,154.00 for greeting cards sold by plaintiff to defendant.

2. The counterclaim emanates from the following facts. Defendant gave plaintiff, on account, a check in the sum of $3,507.60 which was returned marked "non-sufficient funds." The check was put through for collection a second time and was again returned NSF. A substitute check was thereupon forwarded by defendant to plaintiff, with the request that the first check be held and the substitute check put through for collection. The substance of the counterclaim ·is that

both checks were put through for collection resulting in defendant's bank account being overdrawn and certain other of defendant's checks being returned NSF. The counterclaim asserted that plaintiff's actions were willful and that as a result, defendant lost its account at the bank, was embarrassed in its business, and "lost the good will of many of its customers." At trial, we found, *inter alia*, that at the time the replacement check was put through for collection, the plaintiff believed in good faith that the first check was still being held by the bank and that plaintiff did not know that the bank had put the check through a third time for collection. We further found that the bank was not plaintiff's agent in so acting.

on the motion for sanctions which took place on December 2, 1971, was, at our specific direction, reported by the official court reporter, the notes of testimony cannot be found. The court reporter involved left the service of the Court shortly after that hearing, and when he was contacted, stated that he had no record of it.[3] Since there is no record of the hearing on the motion for sanctions, we feel that it is important, for the benefit of both the Court of Appeals and counsel, that we summarize in this memorandum opinion the facts brought to our attention at the hearing as well as certain other background, and set forth the basis for our Order.

On August 18, 1971, we held a pretrial conference. At that time defense counsel asserted that his client contended that some of the merchandise sold and delivered to defendant by plaintiff was defective.[4] Accordingly, we directed that representatives of each party meet to inspect and inventory the merchandise claimed by defendant to be defective. We also directed the defendant to segregate allegedly defective merchandise in advance of the time set for the inspection and inventory. We scheduled another pretrial conference for September 9, 1971, with the instructions that counsel have with them the results of the inspection and inventory at that time. When that second conference was held, we were advised by plaintiff's counsel that Michael McDonough, the principal of the defendant corporation, had been unavailable to permit the inspection. Accordingly, we ordered that the inspection and inventory of the alleged defective merchandise take place without further delay; defendant's counsel

promised that his client would now be available. We left the arrangements to the parties, and they subsequently agreed that the inventory and inspection be held on September 24, 1971, at 1:00 p. m. at defendant's warehouse in Philadelphia.

The following facts, some of which are contained in an affidavit filed by plaintiff's counsel in connection with his motion for sanctions, were adduced at the December 2, 1971, hearing.[5] Pursuant to a letter from counsel, plaintiff's controller came to Philadelphia on September 24, 1971, from his office in Boston to conduct the inspection and inventory. When the controller arrived in the office of plaintiff's counsel, however, the latter telephoned defendant's counsel to state that they were on their way but was informed that Mr. McDonough was in Florida. Counsel for defendant admitted to us that his client had been notified of the time and place of the inspection and of his pre-inventory duties, and that he had given no indication that he would not be present at his warehouse at the time scheduled. Plaintiff's counsel and controller nonetheless met with defendant's counsel at the warehouse. An examination was made of some boxes selected at random, and in each instance the count was found to correspond with the number designated on the box, and no particular defects could be found, although a satisfactory inspection of the entire lot could not take place in the absence of Mr. McDonough. Thorough questioning of defendant's counsel at the hearing failed to reveal the slightest justification for any of the following defaults by Mr. McDonough: (1) failure to perform the required pre-inspec-

---

3. Apparently there has been no problem with the transcript of the trial.

4. As far as we could ascertain it at the pretrial conference, for it was rather vaguely stated, the defense was that there were some wrong cards, broken boxes, damaged cards, and insufficient envelopes. Neither in the Answer nor in defendant's pretrial memorandum was there any in-

dication of what proportion of the total shipment was subject to this defense.

5. The subject motion was formally filed, with accompanying affidavit, on October 22, 1971, and was denominated "Motion for an Order Precluding Defendant from Supporting Its Defense of Alleged Defective Merchandise." Defendant filed no counteraffidavit.

tion duties; (2) failure to afford the inspection when first ordered by this Court; (3) failure to appear for the subsequently scheduled inspection and inventory; and (4) failure to notify his attorney that he would be in Florida instead of appearing for the inspection. Although defendant's counsel notified him of the hearing on plaintiff's motion for sanctions, defendant did not appear. Beside the facts discussed above, the hearing reviewed the procedural history of the inventory and inspection matter, including the events of the two pretrial conferences. At no time did defendant's counsel take issue with any of the facts recited by counsel for the plaintiff. At the conclusion of the hearing, we ordered that the defense of defective merchandise be stricken.[6]

Our order directing inspection of the allegedly defective merchandise was bottomed on rule 37(a), F.R.Civ.P., which authorizes the court to order a party who "fails to permit inspection as requested" to permit the inspection, which is itself provided for in rule 34. Rule 37(b)(2) authorizes the court, when a party fails to obey its discovery order, to make

> such orders in regard to the failure as are just, and among others the following:
>
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying fur-

ther proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

.    .    .    .    .    .

Our order precluding the defendant from supporting its defense of defective merchandise was specifically within our power under rule 37(b)(2)(B); we have also quoted subsections (A) and (C) to show that they too generally authorize the substance of the order we made.

Since we had power to make the order, the only remaining question is whether we abused our discretion in doing so. We feel now, as we did at the time of the order, that it was clearly within our discretion to strike a defense when discovery with respect to that defense had been twice stymied by the defendant in disobedience of orders of the court. We of course feel that resolution of disputes on the merits should not be refused because of minor nonobservances of technical procedural specificities. But in this case we found that the defendant had a sufficient opportunity to cooperate with the plaintiff and the court in proceeding with fundamental and crucial discovery guaranteed by our discovery-oriented procedural system. On the day finally agreed upon, plaintiff's representative came all the way from Boston only to find that the defendant had gone to Florida without so much as the courtesy of a telephone notice of his intended departure. It does not appear that defendant ever made a good faith effort to remedy the situation and comply with the Court's discovery order of which he was aware. Moreover, we note that the limited inspection actually conducted revealed no indication that the alleged defense (theretofore stated in only the vaguest terms in the Answer and Pretrial Memorandum and

---

6. When we entered the Order, we were under the assumption that the notes of the hearing would be filed and neglected to enter a formal order on the subject.

However, on June 29, 1972, we filed an Order, dated December 2, 1971, the date of the hearing, excluding the defense.

at the pretrial conferences) had any validity.

In Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187 (3d Cir. 1971) (per curiam) (alternative holding), the Third Circuit affirmed the district court's dismissal of an antitrust suit "solely for inexcusable failure to answer interrogatories." Similarly, in Hastings v. Maritime Overseas Corp., 411 F.2d 1201 (3d Cir. 1969) (per curiam), the Third Circuit affirmed the district court's dismissal of a seaman's action for maintenance and cure because the plaintiff both disregarded the defendant's written interrogatories and refused to travel from California to Philadelphia at his own expense to give his deposition. The court there held that the plaintiff's refusal to grant discovery in one manner or the other justified dismissal, notwithstanding the fact that "[i]t is regrettable that a litigant's cause of action should be lost without consideration of its merits because of procedural or ancillary matters . . . ." We believe that the omissions of Mr. McDonough were egregious and fully justified our Order.