**Samuel C. ROBERSON and Marjorie Roberson, Plaintiffs,**

v.

**Dr. Lee A. CHRISTOFERSON et al., Defendants.**

**Civ. No. A3–74–15.**

United States District Court, D. North Dakota, Southeastern Division.

Jan. 24, 1975.

---

Max D. Rosenberg, Conmy, Rosenberg & Lucas, P.C., Bismarck, N. D., for plaintiffs.

John D. Kelly and Philip Vogel, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for Dr. Christoferson & Olafson.

Lowell W. Lundberg, Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., for St. Luke's Hospital.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Defendants have collectively moved for a summary judgment under Rule 56, and, alternatively, for dismissal under Rule 37, Federal Rules of Civil Procedure. In moving for a summary judgment, Defendants argue that on the record to date, North Dakota's Statute of Limitations, NDCC § 28–01–18, applicable to malpractice actions, bars this action. Defendants base their dismissal motion on Plaintiffs' failure or refusal to comply with an order of the Court dated July 17, 1974, directing Plaintiffs to file answers to Defendants' interrogatories. It is not necessary to pass on the Rule 56 motion as the Rule 37 motion disposes of the matter.

A brief recitation of the history of this case is necessary to an understanding of the Court's disposition herein. Plaintiffs commenced this action against the Defendants on September 7, 1973. The complaint alleges that on or about

July 13, 1970, and through September, the Defendants, Dr. Lee A. Christoferson and Dr. Richard A. Olafson, negligently performed medical services upon the Plaintiff Samuel C. Roberson, which caused him bodily injury and other damages. The complaint generally alleges negligence in the performance of medical services by the Defendant doctors during Plaintiff's stay at Defendant St. Luke's Hospital—July 13, 1970, to September 26, 1970. Plaintiff came into the care of Defendants as a result of a motorcycle accident in which he sustained injuries to his spine. It is alleged Defendant hospital, by and through its agents, negligently administered pre-operative and post-operative care.

Plaintiff further bases his action on a lack of informed consent theory, alleging:

"That on or about July 13, 1970, and again on July 20, 1970, the Defendants Dr. Lee A. Christoferson and Dr. Richard A. Olafson performed operations upon the Plaintiff Samuel C. Roberson; and administered a course of treatment upon him without informing said plaintiff of the probable consequences of such course of treatment; and did thereby fail to obtain the informed consent of said plaintiff to said course of treatment."

On January 31, 1974, a hearing was held on a motion for summary judgment filed by the Defendants on the grounds that the statute of limitations barred this action.[1] At this hearing, a report of Dr. Alexander C. Johnson of the College Park Medical Center, Great Falls, Montana, which served as the impetus for this law suit, was produced. In its Memorandum Order entered after the hearing, the Court quoted the report and noted that the issues had been narrowed:

"' . . . I see nothing in the later films to account for the strange history of paraplegia developing the day following surgery, though the patient reported as indicated in my original examination record that he was able to move his legs following surgery. The story suggests a vascular disturbance. From the above sequence of events this apparently did not occur as an immediate and direct result of surgery, but probably resulted from some post-operative edema impairing circulation to the cord at this level.

In any event I do not see anything in these films that would justify consideration of re-operation.'

At the hearing, it was conceded by plaintiff's counsel that the plaintiff's action filed on September 7, 1973, is based upon the foregoing report of Dr. Johnson, and the action has been narrowed to: (1) alleged lack of informed consent as to the two operations, and (2) alleged negligent post-operative casual care."

In the course of discovery, Defendants served a set of Interrogatories on both Plaintiffs, filed April 10, 1974. Plaintiff, Samuel C. Roberson, filed partial answers to those interrogatories on May 29. On June 27, Defendants moved this Court for an order compelling Plaintiffs to answer those interrogatories which were not answered, or which were only partially answered. Since Plaintiff Marjorie Roberson had not signed the interrogatories, Defendants' motion included a request to the Court to direct her to answer the interrogatories. The motion continued with specific requests that Plaintiffs answer the following in-

1. Pursuant to this hearing, the Court issued an order, filed February 13, denying the statute of limitations motion, stating "on the basis of the present state of the record before the Court, a question of fact remains as to when, with reasonable diligence, the alleged acts of malpractice could have been discovered". The Court did dismiss the complaint against Dr. Brian E. Briggs, Dr. Myron D. Peterson and St. Joseph's Hospital of Minot, all of whom had been named as Defendants in the case.

terrogatories for the reasons stated (Plaintiffs' answers are also inserted):

"4. Please state the name and address of each person you propose to call as an expert witness at the trial and for each such person provide the following information:

(a) Enumerate the background, training, experience, and other qualifications of each such witness;

(b) State the technical field in which you claim each person is an expert.

Answer: a & b J. W. Bloemendaal, qualified orthopedic surgeon."

Reason: Incomplete Answer

"5. In connection with each person you propose to call as an expert witness at the trial of this case, please state the subject matter upon which the witness is expected to testify, together with the facts and opinion to which each such expert is expected to testify, together with a detailed summary of the grounds for each such opinion.

Answer: J W. Bloemendaal. We are not prepared at this time to go into detail as to his testimony."

Reason: Incomplete and non-responsive answer.

"6. If you intend to use expert medical testimony, please describe in detail the medical theories and authorities relied upon by each such expert to support any conclusion said medical expert may make in connection with the matters his testimony is concerned with.

Answer: That the blockage was caused by negligent, post operative care resulting in paralysis, which was determined as of November 19, 1971, to be permanent."

Reason: Incomplete and non-responsive answer.

"8. List all the proposed exhibits you expect to use in the trial of this case, specifying the type, the author, the publisher, the date of preparation, and the sources of each exhibit.

Answer: Not prepared to do so at this time."

Reason: Failure to Answer.

"38. Set out the nature and amount of each separate item of special damage that the plaintiffs contend is attributable to the alleged wrongful conduct of the defendants, Dr. Lee A. Christoferson, Dr. Richard A. Olafson, and St. Luke's Hospital.

Answer: The answer to this question is set forth in detail in the complaint."

Reason: Evasive and incomplete.

"39. Do either of the plaintiffs contend that any physician has made any statement to either of the plaintiffs admitting or acknowledging that the defendants, Dr. Lee A. Christoferson, Dr. Richard A. Olafson, or St. Luke's Hospital, are chargeable with malpractice or negligent acts or omissions in connection with the surgery, care, and treatment of the plaintiff, Samuel C. Roberson? If the answer to this Interrogatory is in the affirmative, set out each such statement and the date, location, and persons present when each such statement was allegedly made.

Answer: Every doctor I have consulted with has first asked me if there is a lawsuit involved."

Reason: Evasive and incomplete.

A letter response from Plaintiffs' attorney, dated July 11, to Defendants' motion to compel interrogatories, filed on July 17, is enlightening:

"In response to your Rule 37 motion, we will have the interrogatory answers served upon you executed also

by Mrs. Roberson, which should cure that portion of your complaints. The omission of her signature was a drafting error solely.

In reviewing the balance of your objections, I think I can satisfy you on them by simply pointing out that at this time we do not have a written report from this Doctor Bloemendall. Until I have such a report, I cannot go into detail as to his testimony. You will realize that we are working with Montana counsel, and we are dependent upon them for provision of this material.

Quite frankly, from our analysis it appears the thrust of our law suit will be in the nature of the assault claimed for failure—at least according to our client—to warn the plaintiff adequately of possible consequences of the surgery; and, therefore, not obtaining an informed consent from the plaintiff for the provision of the surgery.

Based on the prior employment records and history submitted to you and your knowledge of his physical condition, it would appear that the reference to the complaint in the answer for claimed damages is not facetious.

We will get the answers executed by Mrs. Roberson as soon as possible.

I apologize for the delay on this, but I have just been able to dig down to it now."

It is noteworthy that Counsel's response to Defendants' objections is based on the lack of a written report from Dr. Bloemendaal, who Plaintiffs, in their original answers to Defendants' interrogatories, describe as a "qualified orthopedic surgeon." Further, Plaintiffs appear to concede a lack of evidence to support an action based on negligent post-operative casual care, in stating the main thrust of their action is predicated on lack of informed consent. It is also important to note that Plaintiffs characterize the latter allegation as an assault.

On July 17, this Court granted Defendants' motion *"in its entirety"*, and ordered Plaintiffs to file their answers on or before August 19, 1974. Plaintiffs thereupon filed a copy, with the signature of Mrs. Roberson thereon, of the same deficient answers previously filed with the Court. To this date Plaintiffs have failed or refused to answer Interrogatories 4, 5, 6, 8, 38 and 39, and have thereby failed, or refused to comply with the Court's order of July 17. The Court is left to assume that Dr. Bloemendaal's report was adverse to Plaintiffs' cause, or has not been received in the six months since the Plaintiffs stated they were awaiting its receipt.

## RULE 37

It is this noncompliance upon which Defendants base their Rule 37 motion to dismiss. Rule 37 provides in relevant part:

"(a) Motion for order compelling discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

(1) *Appropriate court.* An application for an order to a party may be made to the court in which the action is pending . . . .

(2) *Motion.* If . . . a party fails to answer an interrogatory submitted under Rule 33 . . . the discovering party may move for an order compelling an answer . . . .

(3) *Evasive or incomplete answer.* For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer . . . .

(b) Failure to comply with order.

(2) *Sanctions by court in which action is pending.* If a party . . . fails to obey an order to provide . . . discovery . . . the court in which the action is pending may make such orders in regard to

the failure as are just, and among others the following:

> (c) An order . . . dismissing the action . . . ."

Defendants have procedurally complied with Rule 37(a). The question before the Court is whether an order of dismissal under Rule 37(b)(2)(C) is just in this action. Defendants state their position as follows:

> "Here Dr. Christoferson and Dr. Olafson have been confronted with . . . wholly inexcusable and prejudicial delays thereafter in finding out what medical evidence they must defend against.
>
> In denying the original motion for summary judgment, this Court extended every possible consideration to the Robersons. That consideration has been badly abused in the intervening months. The defendants have been denied their right to prepare a proper defense. The continuing refusal on the part of the plaintiffs to disclose their medical evidence ought properly to be considered by the court as an acknowledgement that they do not have any."

The imposition of sanctions, even the harshest of sanctions such as those under Rule 37(b)(2)(C), lies within the sound discretion of the court limited only by the requirements of justice to the parties. 6 A.L.R.3d 713, Anno: Judgment in Favor of Plaintiff For Defendant's Failure to Appear, or to Answer Interrogatories, in Pre-trial Proceedings, §§ 4, 11.

The Court finds Defendants' argument for dismissal persuasive, although it is recognized that dismissal is not to be readily granted in absence of compelling reasons. *See generally* 4A Moore's Federal Practice ¶ 37.03 [2.–5]. The sanctions under Rule 37(b) do not turn upon whether the omission of a party was willful,[2] but, the Court finds that Plaintiffs have consciously disregarded its July 17, 1974, Order.

As a predicate to dismissal of Plaintiffs' action, the interrogatories must be found to be material to Defendants' preparation of their defense.[3] The question of materiality has been couched in terms of prejudice to the moving party, where "defendant acted to prevent conscientious discovery as well as the early disposition of the dispute. . . . In my opinion, the defendant's conduct has impeded and frustrated the plaintiff in its investigation and presentation of his case." Vac-Air, Inc. v. John Mohr & Sons, Inc., 53 F.R.D. 319, 321 (E.D.Wis.1971), rev'd 471 F.2d 231 (7th Cir. 1973). The determination of whether an action is to be dismissed has been discussed as a balancing "between the necessity for a trial judge to exercise control and management over his courtroom and docket, and litigants' substantial rights may from time to time suffer as a result of this acknowledged need." Vac-Air, Inc. v. John Mohr & Sons, 471 F.2d 231, 234 (7th Cir. 1973), quoting Scarver v. Allen, 457 F.2d 308, 310 (7th Cir. 1972). No justifiable excuse has been presented for Plaintiffs'

---

2. "In Societe International Pour Participationes Industrielles et Commerciales, S.A. v. Roger, [357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed. 2d 1255 (1958)], the Supreme Court held that a refusal means simply noncompliance with the order and no contumacy or design need be shown. This view of the matter was made explicit by the 1970 amendments [to Rule 37(b)] when the language was changed from 'refuses' to 'fails'." 4A Moore's Federal Practice, ¶ 37.03 [2.–11]. Thus, a judgment of default was supported by a failure to answer interrogatories where the record disclosed either a total lack of diligence on part of counsel, or "extended indifference" by defendant. Sivelle v. Maloof, 373 F.2d 520 (1st Cir. 1967).

3. *See* 6 A.L.R.3d 713 Anno: Judgment in Favor of Plaintiff For Defendant's Failure to Appear, or to Answer Questions or Interrogatories in Pretrial Proceedings, §§ 6, 11, wherein cases are examined where courts have refused to enter default judgments where the evidence sought in unanswered interrogatories addressed to defendants was not material to the moving plaintiff's cause of action.

refusal or failure to answer the interrogatories to date, and there is no claim that the interrogatories are unreasonable.

Whether the failure of Plaintiffs to comply with the Court's order and answer Defendants' interrogatories is prejudicial to their defense preparations merits discussion. In view of the concession of Plaintiffs' counsel at the January 31, 1974, hearing, together with his letter response to Defendants' motion, it would be difficult at best to posit Plaintiffs' theory, but Defendants' interrogatories go directly to the theory of negligent post-operative care and the requisite supporting evidence.

## EXPERT TESTIMONY IS THE *SINE QUA NON* OF NEGLIGENT MALPRACTICE ACTIONS

■ The standard of due care imposed upon a physician has been discussed by the North Dakota Supreme Court:

"The court instructed the jury in part as follows:

'By undertaking professional service to a patient, a physician impliedly represents that he possesses, and it is his duty to possess, that degree of learning and skill ordinarily possessed by physicians of good standing, practicing in the same locality and under similar circumstances. It is his further duty to use the care ordinarily exercised in like cases by reputable members of his profession practicing in the same locality and under similar circumstances and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed. A violation of any of those duties is a form of negligence that we call malpractice.'

The court further instructed the jury:

'In determining whether defendant's learning, skill and conduct fulfilled the duties imposed on him by law, as they have been stated to you, you are not permitted to set up arbitrarily a standard of your own. The standard, I remind you, was set by the learning, skill and care ordinarily possessed and practiced by others of the same profession in good standing, in the same locality and at the same time.'

This was a correct statement of the degree of skill and care required of physicians in North Dakota." Stokes v. Dailey, 97 N.W.2d 676, 685 (N.D. 1959) (citation omitted). *In accord* Benzmiller v. Swanson, 117 N.W.2d 281 (N.D.1962); Stokes v. Dailey, 85 N.W.2d 745 (N.D.1957).

The North Dakota Court further recognized that a plaintiff generally "cannot establish a cause of action for alleged malpractice without introducing evidence of medical expert to show the standard of care and skill in the Grand Forks locality involving the treatment of the particular affliction with which the plaintiff was affected". Stokes v. Dailey, 85 N.W.2d 745 (N.D.1957). The general rule is that only expert testimony may establish negligence of a physician, i. e. that a doctor has breached a standard of care required of him. Marchlewicz v. Stanton, 50 Mich.App. 344, 213 N.W.2d 317 (1973); Hestbeck v. Hennepin County, 297 Minn. 419, 212 N.W.2d 361 (1973); Perin v. Hayne, Iowa, 210 N.W.2d 609 (1973). The exceptions to this rule, which have not been raised or pleaded, are instances where the physician's lack of care is so obvious as to be within the comprehension of a layman, or, secondly, where the physician injured a part of the body not involved in the treatment. Perin v. Hayne, 210 N.W.2d 609 (Iowa 1973).

## MATERIALITY OF PLAINTIFFS' OMISSIONS

It is clear that the interrogatories which have not been answered are material to Plaintiffs' allegation of negligent post-operative care, and are material to

the preparation of the defense. Plaintiffs have refused, or have been unable to provide Defendants with the subject matter of expert medical testimony intended to be offered or the theories and authorities to be relied upon. Defendants' efforts to get Plaintiff to disclose in this area have resulted in a name of a person designated "qualified orthopedic surgeon". Plaintiffs have refused or have been unable to detail the nature or acts of post-operative care alleged to have caused Plaintiff's paralysis; have provided no exhibits or reports as supporting evidence; and have not itemized and described Plaintiff's damages. The only material touching on Plaintiff's paralysis is Dr. Johnson's report which leaves the cause of Plaintiff's paralysis unexplained. The only evidence presented by Plaintiffs is their self-serving and unsupported generalizations in the answer to the interrogatories to the effect that, after surgery, Plaintiff was immediately placed on a solid diet, and that he was not turned as regularly as he should have been, thereby resulting in the forming of ulcers. There is no indication as to whether these acts contributed to Plaintiff's paralysis and if so, in what manner. Plaintiff has not provided them with any other details of the acts of post-operative care alleged to constitute malpractice, or of the standards of care alleged to have been breached, or the causal relationship. In view of this, it is an inescapable conclusion that Defendants have been precluded from preparation of a defense and this is obviously prejudicial.

Although courts are reluctant to dismiss an action for procedural deficiencies which preclude adjudication on the merits, in this case it is concluded there is no merit.

When the omissions of counsel are prolonged and materially affect the substantive rights of an adverse party, the drastic remedies of Rule 37(b)(2)(C) have been applied. Cabales v. United States, 447 F.2d 1358 (2nd Cir. 1971) (per curiam), affirming, 51 F.R.D. 498 (S.D.N.Y.1970), seaman's claims for wages, personal effects and libel and slander were properly dismissed for failure to comply with consent order compelling seaman to answer interrogatories, specifically his failure to sign and verify written answer to interrogatories, two of which did not qualify as full and complete answers per the court's order; Mangano v. American Radiator & Standard Sanitary Corporation, 438 F.2d 1187 (3rd Cir. 1971) (per curiam) (alternative holding), district court's dismissal of an anti-trust suit "solely for inexcusable failure to answer interrogatories", affirmed; Hastings v. Maritime Overseas Corporation, 411 F.2d 1201 (3rd Cir. 1969) (per curiam), district court's dismissal of a seaman's action for maintenance and care because plaintiff both disregarded the defendant's written interrogatories and refused to travel from California to Philadelphia at his own expense to give deposition; Metropolitan Greetings, Inc. v. Michael McDonough, Inc., 60 F.R.D. 58 (E.D.Pa.1973), failure to afford inspection of merchandise, and failure to appear for rescheduled inspection and inventory, caused court to order defense of defective merchandise stricken in action for goods sold and delivered; Seanor v. Bair Transport Company of Delaware, Inc., 54 F.R.D. 35 (E.D.Pa.1971), entry of default judgment for failure to satisfactorily answer plaintiff's interrogatories pursuant to court order. See also Cromaglass Corporation v. Ferm, 344 F.Supp. 924 (M.D.Pa.1972); Gulf Oil Corporation v. Bill's Farm Center, 52 F.R.D. 114 (W.D.Mo.1970).

## EXPERT TESTIMONY IS ESSENTIAL TO AN ACTION BASED ON LACK OF INFORMED CONSENT

One final point relevant to dismissal must necessarily be discussed. Plaintiffs have indicated the main thrust of their action may be alleged lack of informed consent, which their

counsel has characterized as an assault. No expert medical testimony would be necessary to prove an assault. *See* Cantebury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (1972), cert. den., 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518; Cobbs v. Grant, 8 Cal.3d 229, 104 Cal. Rptr. 505, 502 P.2d 1 (1972), and the Court would hesitate to dismiss this cause of action if Plaintiffs' characterization is correct, since Plaintiffs' failure to comply with the rules and the order of the Court relating to expert testimony would not be material to the preparation of Plaintiffs' case or the defense.

■ Courts haves split on whether an action based on lack of informed consent is properly termed an assault and battery action or a negligent malpractice action, and consequently whether lay testimony would be sufficient to submit the issue to a jury. *See* Trogun v. Fruchtman, 58 Wis.2d 569, 207 N.W.2d 297, 309–315 (1973). The Court applies what has been characterized as the "majority rationale",[4] and views the law in North Dakota as consistent with that of other midwestern states as expressed in Marchlewicz v. Stanton, 50 Mich.App. 344, 213 N.W.2d 317 (1973):

> "Defendant also alleges that the trial court erred in submitting the issue of uninformed consent to the jury. The question of whether a doctor is negligent in failing to inform the patient of possible consequences of an operation is to be determined according to the general practice customarily followed by the medical profession in the locality. An examination of the record in the case at bar reveals a complete absence of any medical testimony that the information imparted by Dr. Stanton to plaintiff, prior to the oper-

ation, failed to conform to the standard of practice of the medical profession. Absent such testimony, it was error to submit the issue of uninformed consent to the jury." 213 N. W.2d at 320. (citations omitted).

Other midwestern decisions in accord with the above disposition of the lack of informed consent issue and which have expressly required expert medical testimony, thereby expressly or impliedly rejecting an assault and battery approach to the issue include: Perin v. Hayne, Iowa, 210 N.W.2d 609, 616–618 (1973); Trogun v. Fruchtman, 58 Wis.2d 569, 207 N.W.2d 297, 309–315 (1973); Sinkey v. Surgical Associates, Iowa, 186 N. W.2d 658 (1971); Grosjean v. Spencer, 258 Iowa 685, 140 N.W.2d 139, 144, 145 (1966); Miles v. Van Gelder, 1 Mich. App. 522, 137 N.W.2d 292 (1965); Block v. McVay, 80 S.D. 469, 126 N.W. 2d 808, 812 (1964); Ericksen v. Wilson, 266 Minn. 401, 123 N.W.2d 687 (Minn. 1963); Roberts v. Young, 369 Mich. 133, 119 N.W.2d 627 (1963). The Court finds the characterization of a lack of informed consent action as a negligent malpractice action to be the better approach. The rationale of Trogun v. Fruchtman, *supra,* is persuasive:

> "Several reasons exist for the inadequacy of the assault and battery theory of liability in situations such as the instant case where the alleged misconduct on the part of the physician amounts to a failure to disclose the ramifications of a pending course of treatment, therapy, or surgery rather than the removal of an organ other than that consented to. First, the act complained of in these cases simply does not fit comfortably within the traditional concepts of battery——the

---

4. Cantebury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772, 792 (1972). *Cantebury* refused to concur with what it regarded as the majority rationale, stating:

" . . . Lay witness testimony can competently establish a physician's failure to disclose particular risk information, the patient's lack of knowledge of the risk, and the adverse consequences following

the treatment. Experts are unnecessary to a showing of the materiality of a risk to a patient's decision on treatment, or to the reasonably, expectable effect of risk disclosure on the decision," *Id* at 792. *Cantebury* states the law as it exists in the District of Columbia. This Court must determine the law in North Dakota.

intent to unlawfully touch the person of another. In cases such as the instant one, physicians are invariably acting in good faith and for the benefit of the patient. While the result may not be that desired, the act complained of is surely not of an antisocial nature usually associated with the tort of assault and battery or battery. While the authorized removal of an organ yet fits the concept of battery, the failure to adequately advise of potential negative ramifications of a treatment does not. Second, and related to the first, the failure to inform a patient is probably not, in the usual case, an intentional act and hence not within the traditional concept of intentional torts. Third, the act complained of in informed consent cases is not within the traditional idea of 'contact' or 'touching.' In the typical situation, as here, the physician inpeccably performs the surgery or other treatment. Complained of are the personal reactions to such treatment which are unanticipated by the patient. Thus, for example, the instant drug therapy is not alleged to be an unpermitted touching but rather, the plaintiff alleges he ought to have been advised of the possibility of hepatitis which occurs without fault on anyone's part. Fourth, a valid question exists with respect to whether a physician's malpractice insurance covers liability for an arguably 'criminal' act—battery. If not, it may be asked why a physician should be required to pay out of his own pocket for what is essentially an act of negligence—failing to inform a patient of the risks indigenous to the treatment? Fifth, these essentially negligence cases do not fit the traditional mold of situations wherein punitive damages can be awarded. For these reasons, we conclude it is preferable to affirmatively recognize a legal duty, bottomed upon a negligence theory of liability, in cases wherein it is alleged the patient-plaintiff was not informed adequately of the ramification of a course of treatment." 207 N.W.2d at 312, 313. North Dakota case law is consistent with the treatment of lack of informed consent theory as negligent malpractice. *See* Tvedt v. Haugen, 70 N.D. 338, 294 N.W. 183 (1940), and it is probable the North Dakota Supreme Court, if faced with the question, would adopt the approach of the other midwestern states.

■ The failure of the Plaintiffs to properly respond to Defendants' interrogatories is material and prejudicial to their defense.

Plaintiffs have been afforded more than ample time and opportunity to disclose their alleged evidence of Defendants' malpractice. The obvious conclusion to be drawn from their failure to comply with the rules and with the Court order, even when faced with Defendants' motion to dismiss, is that they have no evidence. To permit the case to continue would be a travesty on justice.

It is ordered that Defendants' Motion for Dismissal under Rule 37 is granted and judgment of dismissal with prejudice be entered.